## M. B. HARWELL v. THE STATE.

1. CONTEMPT. *Defendant not a competent witness.* In answer to a bench warrant for contempt, the defendant by way of purging himself of contempt, may file his affidavit upon the return of the warrant. But the proceeding being in the nature of a criminal prosecution the defendant is not competent to testify in his own behalf.

2. SAME. *Illegal interference with grand jury.* The grand jury is a constitutional part of the court, and any illegal or corrupt interference with them in the discharge of their duties, is a contempt of court

FROM GILES.

Appeal in error from the Circuit Court of Giles county.    W. S. McLEMORE, J.

N. SMITHSON and T. J. ALLEN for Harwell.

ATTORNEY-GENERAL LEA for The State.

DEADERICK, C. J., delivered the opinion of the court.

A bench warrant was issued by the Hon. W. S. McLemore, Judge of the 9th Judicial Circuit, directed to the sheriff of Giles county. It recites: "It appearing to the court that M. B. Harwell is probably guilty of willful misbehavior in the presence of the court, or so near thereto, as to obstruct the administration of justice; and also of wilfully conversing with grand jurors about matters of importance before them, and tampering with witnesses before them. You are commanded to forthwith arrest the said M. B. Har-

well and bring him before me at the court house, in Pulaski, to purge himself of said contempt or be dealt with according to law." This writ was officially signed by the judge, and was executed by the sheriff by arresting and bringing Harwell before the judge in open court.

Whereupon, after hearing evidence and argument of counsel, the court adjudged "that the defendant, M. B. Harwell, is guilty of contempt of court, and for his offense aforesaid, do assess his fine at twenty-five dollars and imprisonment in the county jail for the period of five days, and that he pay the costs of this cause, for all which execution will issue."

The defendant prayed an appeal, which was granted and a bill of exceptions was tendered and signed by the court.

From the evidence it appears that Wells was about to indict Willis Garner for forgery, and Buck White, a member of the grand jury at the July term, 1882, of the Circuit Court of Giles county, testified that one evening of the term, Harwell and himself, who were neighbors were riding home, and Harwell remarked that he had seen Mr. Wells at the door of the grand jury room, and he had the order that was said to be forged by Garner, the charge being that Garner had signed Wells' name to the order, and that he, Harwell, had asked Wells to let him see the order, which Wells did, and that Harwell said he had bought out Garner's crop and advised him to leave. Nothing more was said on this subject between the parties. Garner had made a crop on Harwell's land.

35—VOL. 10.

Wells was then examined and said he had brought the forged order to court, to indict Garner, and was in the office of the county register and had the order lying on his table, and was talking to him about it when Harwell walked in and asked him to let him look at it, and said that he had heard a good deal about it and had a curiosity to see it. The order was on the table and any one there could see it. Harwell looked at it and said he believed it was a woman's handwriting. Witness then said that he walked up stairs to the grand jury room, and Harwell went up behind him and asked an officer of the court if there was any one in the grand jury room, to which the officer replied there was not. The witness then went into the grand jury room and upon coming out saw nothing of Harwell. Afterwards, witness says he met Harwell, who remarked "you have gone in there, what are they going to do about that thing?"

Copeland, a grand juror, said before the hour of meeting of the grand jury, he, with four or five other jurors was in their room, and Harwell came in and called me to one side, and said he did not wish to ask anything about the proceedings of the grand jury, but would like to see the order so as to compare with a postal card he had." He told Harwell he had no right to show him the order, and he went out.

Defendant introduced Garner, who testified that he lived on defendant's land and raised a crop there, and owed him about $50, and they had been talking about defendint's buying his crop but had not agreed, and that defendant did not advise him to leave. De-

fendant also proposed to testify in his own behalf, but was not allowed to do so by the court.

In answer to the warrant, and by way of purging himself of contempt, he might have filed his affidavit upon return of the warrant. But the proceeding being in the nature of a criminal prosecution the defendant was not competent to testify as a witness in his own behalf. And there was no error in the refusal of the court to allow him to be examined as a witness.

It will be observed that the first specification of the warrant is "willful misconduct in the presence of the court, or so near thereto as to obstruct the administration of justice." This is the exact language of sub-sec. 1 of sec. 4106 of ·the Code, wherein contempts of court are defined. Obviously therefore, this specification is framed on subsection 1. But we think the purpose of this sub-section was to subject any person to the penalties of contempt, who wilfully, by clamorous or violent language, or by turbulent conduct in the presence of the court, or near thereto, interrupted its proceedings, and thereby obstructed the administration of justice.

The second specification has reference only to the conduct of the officers of the court.

The third specific act of contempt is disobedience or resistence of any lawful order, writ, process or decree or the court.

The fourth specification is, "abuse of or unlawful interference with the process or proceedings of the court. And fifth and lastly, wilfully conversing with jurors in relation to the merits of the cause, in the

trial of which they are engaged, or otherwise tampering with them, amount to contempt of court."

Section 4106 of the Code restricts the power of the courts of the State in punishment for contempts to the five causes therein specified, adding as sub-section 6, any other act or omission declared a contempt by law. And this has been construed to apply to such other acts or omissions as may be declared by statute to be a contempt of court.

We are of opinion that the specifications of the warrant do not embrace a charge of either of the offenses named in the second and third sub-sections of section 4106 of the Code. And the evidence fails to establish the offense described in the first sub-section, which is charged in the warrant.

The acts disclosed in the evidence fall more nearly under the charge of interference with the proceedings of the court by talking with grand jurors about matters before them, than any other of the specifications contained in the statute or in the warrant.

The grand jury is a constitutional part of the court, and any illegal or corrupt interference with them in the discharge of their duties, or attempt by outside influence, to control their action, would be a contempt of court, for which the offender should be punished. But we hardly think the facts disclosed in evidence are of the character indicated.

Undoubtedly defendant had no right to enquire of a grand juror what had taken place in the jury room, in relation to the particular case in which he felt an interest. But he said nothing to dissuade the juror

from finding a true bill.    He seemed to be inspired more by impertinent curiosity than a corrupt purpose or intentional violation of law, of like character were his inquiries of a witness who held the paper alleged to have been forged.

If the evidence satisfied us that the defendant corruptly sought to interfere with the proceedings of the court, or to prevent the ends of justice, we should not hesitate to approve the judgment of the court. But we do not think that the evidence shows such purpose, and therefore reverse the judgment.