**STATE of Tennessee, Appellee,**

v.

**Bob McD. GREEN, Appellant.**

Court of Criminal Appeals of Tennessee,
at Knoxville.

Jan. 2, 1986.

W.J. Michael Cody, Atty. Gen. & Reporter, Wayne E. Uhl, Asst. Atty. Gen., Nashville, William Mooney, Teresa Murray, Asst. Dist. Attys. Gen., Johnson City, for appellee.

John T. Milburn Rogers, Greeneville, Charles T. Herndon, IV, Johnson City, for appellant.

## OPINION

O'BRIEN, Judge.

Bob McDaniel Green, attorney, appeals from five summary contempt judgments imposed upon him during the trial of the State's case for first degree murder against Vesper Denton Hicks in the Washington County Criminal Court.

The trial began with a pretrial motion hearing on October 31, 1983. On that date the court held that Mr. Green arrived fifty-five minutes late for court, without a valid excuse, found him in contempt and fined him $10 and costs. Both fine and costs were subsequently suspended.

On November 9, 1983, in the course of an out-of-jury hearing, the following exchange took place:

MR. GREEN: We'd like to renew our motion, Your Honor, that Your Honor recuse himself from the bench at this moment. Your Honor, this record will show that only on those occasions when Your Honor is convinced that serious reversible error will be committed does Your Honor exclude proof that the State wants to put in no matter how far afield. Your Honor yesterday let blatant, egregious, horrible hearsay in this record because the State wanted to put it in. I'm offering pertinent, competent proof going to the direct issues in this case; and Your Honor is denying it.

THE COURT: Mr. Green, save your argument, and if there's a conviction, save your argument for the Court of Appeals or Supreme Court, and I don't want you jerking chairs around.

MR. GREEN: Well, I apologize, Your Honor. I'm very deeply emotionally involved because I am convinced this man cannot get a fair trial in Your Honor's Court.

GENERAL MOONEY: Your Honor, I—I suggest we take a recess. I—fourteen years as a prosecutor, I've never heard a lawyer say something like that to the Court.

THE COURT: Well, I'm—we're going to take ...

MR. GREEN: In 23 years.

THE COURT: We're going to take a recess just as soon as I hold him in contempt. Mr. Green, you're held in contempt for your actions of jerking a chair around and making accusations as to my being unfair and letting evidence in when I shouldn't and you're fined $25.00, and you're sentenced to five days in the Washington County Jail.

On November 11, 1983, at the conclusion of the trial, the jury deliberated and reported they could not reach a verdict. The trial judge declared a mistrial and dismissed the jury. The following exchange took place:

THE COURT: Now, Mr. Green, would you come over in front of the microphone, please, and I have a few things to say, and please don't interrupt me until I get through. Now, during this trial, I've given many commands or orders or whatever you call it. Some of them are oral. Many of them were written, and in my opinion for the most part, either they were completely ignored or circumvented, and during the trial with one exception, in order not to slow down the trial or affect your effectiveness, I let matters go until now. And in the interest of justice and for the preservation of the system, I'm of the opinion that I must do what I'm about to do.

The Court finds that when you accused me of "assisting the State," that you were in contempt, and I hereby fine you $20.00 and costs and sentence you to the Washington County Jail for two days. The jail sentence is to run consecutive to the five day jail sentence handed down on the 9th day of this month.

And that when you said that General William Mooney might be suffering from some mental illness after all the attorneys had been ordered not to make remarks about opposing counsel, in my opinion that was contemptable (sic), and you're hereby fined $25.00 and sentenced to two days in the Washington County Jail, the two day jail sentence to run consecutive to the two day jail sentence just now handed down and the five day jail sentence handed down on the 9th of this month. And we set a bond of $250.00 on the one on the 9th, $250.00 on the first one I said, and $250.00 on the third one and let you sign your own bond. If you want to sign your own bind (sic), you have, of course, you know thirty days in which to appeal.

MR. GREEN: May I now respond, Your Honor?

THE COURT: Yes, Sir.

MR. GREEN: Your Honor, the acts of the Court that the Court has just taken is in my opinion simply another example of the Court's arbitrary, unfair and extremely prejudicial conduct throughout this trial. I sincerely and honestly believe that had we been treated impartially and had the State—had the Court not shown consistent and continued partiality to the State, that we would now have an acquittal as opposed to a mistrial.

THE COURT: I'd like to say one other thing, too. I don't want to argue with you, but I've been at this job seventeen years, and I've never seen such behavior as I've seen out of you during this trial.

MR. GREEN: Your Honor please, I've been at this job twenty-four years and four of that was with the State. I have practiced in every Court in the area before many, many Judges, and I have never seen conduct from the bench such as Your Honor's during this trial. And with that, that's all I have to say.

THE COURT: Now—all right. You're in contempt again, and I will fine you $25.00 and sentence you to an additional five days in jail, the five day jail sentence to run consecutive to all other jail sen-

tences. Now do you have anything else you want to say?

MR. GREEN: Your Honor is apparently telling me that I cannot respond to Your Honor's statements.

THE COURT: You cannot insult me like that. Now, you might not respect me as an individual, but you're going to respect this Court.

MR. GREEN: I do respect the Court, and I respect the institution immensely.

THE COURT: Okay. That'll be all. Court's adjourned.

■ In *State v. Maddux,* 571 S.W.2d 819, 821 (Tenn.1978), the Court explicated the difference between the two species of contempt, direct and indirect, and set forth the minimal procedures to satisfy the requirements of due process in the case of each. Direct contempt is based upon acts committed in the presence of the court, and may be punished summarily. Indirect contempt is based upon facts not committed in the presence of the court, and may be punished only after the offender has been given notice, and the opportunity to respond to the charges at a hearing.

Rule 42 of the Tennessee Rules of Criminal Procedure provides for the disposition of criminal contempt proceedings. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record. Otherwise, a criminal contempt shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. That notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the District Attorney General or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the hearing except with the defendant's consent.

With the possible exception of the first judgment of contempt in which the trial judge was dissatisfied with counsel's reasons for purportedly being late to court, each of the acts charged as being contemptuous was committed in the actual presence of the court. The orders and certificates of the trial judge finding Mr. Green in contempt clearly indicate that three of the charges involved disrespect to or criticism of the judge. The fourth judgment charges that Mr. Green without good reason stated to the jury on November 9th that the Attorney General was suffering from some mental condition.

There is nothing short of a complete review of this record to fully demonstrate the acrimonious atmosphere existing throughout the course of the proceedings in the trial court. Because of the action we are required to take we refrain from commenting further about the conduct of counsel, both for the State and for the defense, except to say we have never, within our own experience or among any of the cases called to our attention or consulted in reaching a decision, observed conduct on the part of both counsel so calculated to obstruct and interfere with the orderly administration of the court's business, or directed against its dignity and authority in attempting to maintain the proper judicial atmosphere as in the course of this case.

■ Both the case law and Tennessee Rule of Criminal Procedure 42(b), which has the force of law, mandate that another judge be appointed to preside at a hearing on these charges. In *Taylor v. Hayes,* 418 U.S. 488, 94 S.Ct. 2697, 2704, 41 L.Ed.2d 897 (1974), the court commented that contemptuous conduct, though short of personal attack, may still provoke a trial judge and so embroil him in controversy that it would be difficult to maintain the calm detachment necessary for fair adjudication. In making this ultimate judgment, the inquiry must not only be whether there was actual bias on the judge's part, but also

whether there was such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interest of the court and the interest of the accused. At the time these judgments of contempt went down, there was a previous charge of contempt against Mr. Green pending in this Court after an adjudication in his favor in a separate proceeding conducted by a judge appointed by the Supreme Court to hear the matter. At least three of the contempt judgments against Mr. Green appear to involve disrespect to or criticism of the trial judge. We conclude that in order to avoid the possibility of any appearance of bias that all the charges involved should be considered by some judge other than the trial judge involved in this case.

The appeal is dismissed and the matter is remanded to the trial court. The trial judge is directed to petition the Supreme Court for appointment of another judge to preside at the hearing of each of the charges of contempt against Mr. Green in this case.

DUNCAN and CORNELIUS, JJ., concur.