STATE of Tennessee, Appellee,

v.

Melvin G. TURNER, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

Aug. 23, 1995.

Permission to Appeal Denied by Supreme Court Feb. 5, 1996.

Lionel R. Barrett, Jr., Nashville, Kim Sims, Memphis, for Appellant.

Charles W. Burson, Attorney General & Reporter, Joel W. Perry, Assistant Attorney General, Criminal Justice Division, Nashville, John W. Pierotti, District Attorney General, Phillip G. Harris, Assistant District Attorney General, Memphis, for Appellee.

OPINION

WHITE, Judge.

Appellant, Melvin G. Turner, appeals as of right from three judgments of contempt summarily ordered by the Criminal Court for Shelby County. Appellant was sentenced to ten days in the county jail and a fifty dollar fine for each contempt.[1] The sentences are to be served consecutively.[2]

On appeal, appellant questions whether his conduct constituted criminal contempt, whether the trial court's summary contempt orders denied his right to due process, and whether the multiple contempt orders violated the double jeopardy provisions of the United States and Tennessee Constitutions.[3] We affirm the trial courts imposition of summary contempt orders and the sentences in this case.

The record indicates that the contempt orders arose from a misdemeanor trial held in Shelby County Criminal Court before Judge Joseph McCartie. Appellant was counsel of record for the defendant in the criminal trial. There was no court reporter present; as a result, preparation of the record of the contempt proceedings has involved some procedural difficulties which have complicated the resolution of this appeal. We will recount the procedural history in detail to place this case in proper perspective.

I.

The summary orders of contempt were certified by the trial court pursuant to Rule 42(a), Tennessee Rules of Criminal Procedure. Appellant filed a notice of appeal on the same day and also made a $1000 appeal bond. On May 25, 1993, counsel for appellant filed a motion asking the court to reconsider the contempt orders. There is no ruling on this motion in the record. On July 23, 1993, appellant filed a designation of the record that indicated a statement of the evidence would be filed pursuant to Tennessee Rules of Appellate Procedure Rule 24(c). On September 16, 1993, this court granted appellant an extension of time in which to file the statement. A statement of evidence was filed thereafter with the clerk of this court, rather than with the clerk of the trial court as required by Rule 24(c).

After appellant filed a brief in this court, the state moved to have the statement of the evidence stricken from the record due to its procedural deficiencies. This court granted the motion and ordered appellant and the state to file proper statements of the evidence and any objections with the clerk of the trial court pursuant to Rule 24(c). The trial court was directed to resolve disputes pursuant to the Rule. Tenn.R.App.P. 24(e).

Appellant and the state filed proposed statements of the evidence in the trial court. The trial court certified the following statement of the evidence:

Pursuant to Tennessee Rules of Appellate Procedure 24(c) and after examining the Statement of the Evidence filed by the Defendant and the State in this cause, the Court finds that there is a conflict between the two and therefore will submit the following as the Statement of Evidence in the matter of the summary contempt finding against [appellant].

On April 21, 1993 the Court was engaged in the trial of Emmett Woods. This trial was being conducted with a jury but

1. The maximum penalty for contempt is ten days and a fifty dollar fine. Tenn.Code Ann. § 29–9–103 (1994 Supp.).

2. *See* Tenn.Code Ann. § 40–35–115(b)(7) (1990 Repl.).

3. As subissues, appellant contends (a) that his conduct was not willful; (b) that there was no obstruction of justice; (c) that his conduct was not intentional or flagrant; and (d) that he was not given an opportunity to be heard before the trial court imposed punishment.

there was no court reporter retained by the defense. Mr. Woods was being defended by [appellant]. The State was represented by Assistant District Attorney Phillip G. Harris. The State called as a witness, Beverly Lester, and during the cross-examination of this witness the State made an objection. The Court sustained the objection and [appellant] began arguing with the Court in a disrespectful and loud voice. The Court talked firmly but professionally with [appellant] and urged him to calm down. [Appellant] then shouted at [the court], in the presence of the jury, "don't you raise your voice to me." [The court] sent the jury out of the courtroom and after they left found [appellant] in summary contempt for his outburst and assessed 10 days in jail and a fine of $50. [Appellant] then responded, "I don't care what you do. Send me to jail." At that point [appellant] turned to leave the court room and had to be stopped by deputies. He stated that "I am not going to jail." [Appellant] then spoke to the Court in a loud and disrespectful voice, "You think you are powerful on that bench, send me to jail." The Court then assessed another summary contempt on [appellant] and sentenced him to an additional 10 days and a fine of $50 to be served consecutively to the first sentence. [Appellant] then demanded that the Court declare a mistrial. He went on to challenge the Court by saying, "You are not going to have anything to do with any of my cases. I am not afraid of you or your contempts." The Court again found [appellant] in summary contempt and assessed 10 days and a fine of $50 to be served consecutively to the previous sentence. [Appellant] was then removed from the courtroom. This all occurred in the courtroom, in the presence of the judge, the courtroom personnel and the prosecutor.

Subsequently, the trial court entered an order approving the above statement of the evidence and making it part of the record on appeal. The order, signed by the trial judge, bears a handwritten notation that "[t]he Court does not approve the delayed statement of the evidence as filed by the [attorney] for [appellant] and has filed its own statement of the evidence." The order is also signed by an assistant district attorney and includes the handwritten statement that "[t]he State objects to [appellant's] statement of the evidence and pursuant to TRAP 24(c) has prepared an alternative statement and had filed [it] with the Clerk." Finally, the order is signed by counsel for appellant.[4]

■ Appellant filed an objection to the statement of evidence approved by the trial court.[5] Appellant conceded that "[a]bsent extraordinary circumstances the determination of the trial court is conclusive" regarding the content of the record. However, appellant asserted that the case presented "extraordinary circumstances" to nullify that rule. However, he did not pursue this issue in his brief, nor did he request permission to file a supplemental brief after the trial court approved a different statement of the evidence than that reflected in appellant's brief. Likewise, appellant did not file a reply to the brief of the state.[6] It is with this procedural backdrop that we turn to the law governing contempt in Tennessee.

## II.

### A.

■ Contempts may be criminal or civil in nature depending on whether the purpose of

4. The proposed statement of evidence filed by appellant differed significantly from that filed by the state and trial judge. Appellant claimed that the trial judge addressed him in harsh and disrespectful tones, that the trial judge continually berated him, and that a heated argument eventually ensued. The proposed statement filed by appellant also makes reference to only one contempt, rather than three as indicated in the statement of evidence approved by the trial judge.

5. Notwithstanding the differences we have noted in appellant's proposed statement, his objection did not contest the specific content of the statement of evidence approved by the trial judge.

6. As a result, the brief filed by appellant does not make proper references to the statement of the evidence that was approved by the trial court. Although failure to cite to the record properly is a ground for waiver, *see, e.g., State v. Killebrew,* 760 S.W.2d 228 (Tenn.Crim.App.), *perm. to appeal denied,* (Tenn.1988), we opt to review the issues presented.

the contempt is to coerce or to punish. In *State ex rel. Anderson v. Daugherty*, 137 Tenn. 125, 191 S.W. 974 (1917), our supreme court made the following distinctions:

> A "civil contempt" is one where a person refuses or fails to comply with an order of court in a civil case; and punishment is meted at the instance and for the benefit of a party litigant. The proceeding is in furtherance of the right of a private person which the court determined that he, as a litigant, is entitled to. To this class of contempt belong such an act as the refusal to pay alimony, as ordered.... If imprisonment be ordered it is remedial and coercive in character, having relation to the compelling of the doing of something by the contemnor which when done will work his discharge. As has been said, in such case the one imprisoned "carries the keys to his prison in his own pocket...."

> "Criminal contempts," on the other hand, are punitive in character, and the proceeding is to vindicate the authority of the law, and the court as an organ of society. Such contempts, while they may arise in private litigation, in a very true sense "raise an issue between the public and the accused."

*State ex rel Anderson v. Daugherty*, 191 S.W. at 974 (citations omitted). *See also Shiflet v. State*, 217 Tenn. 690, 400 S.W.2d 542, 543 (1966); *Sherrod v. Wix*, 849 S.W.2d 780, 786, n. 4 (Tenn.App.1992), *perm. to appeal denied*, (Tenn.1993).[7] Contempt may be further categorized with regard to where the contemptuous conduct takes place. In *State v. Maddux*, 571 S.W.2d 819 (Tenn.1978), our supreme court said:

> [T]here are two species of contempt, direct and indirect, which differ, among other ways, in the minimal procedure that will satisfy the requirement of due process in the case of each. *Direct contempt is based upon acts committed in the presence of the court, and may be punished summarily.* Indirect contempt is based upon acts not committed in the presence of the court, and may be punished only after the offender has been given notice, and the opportunity to respond to the charges at a hearing.

*State v. Maddux*, 571 S.W.2d at 821 (emphasis added) (citations omitted); *see also State v. Creasy*, 885 S.W.2d 829, 833 (Tenn.Crim. App.), *perm. to appeal denied*, (Tenn.1994).

■ In Tennessee, the court's authority to punish certain acts as contempt derives from statute, and is limited to the forms of conduct set forth in Tennessee Code Annotated Section 29–9–102:

> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administrations of justice.

> (2) The willful misbehavior of any of the officers of said courts, in their official transactions.

> (3) The willful disobedience or resistance of any officer of said courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of said courts.

> (4) Abuse of, or unlawful interference with, the process or proceedings of the court.

> (5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them.

> (6) Any other act or omission declared a contempt by law.

Thus, any conduct punished as contempt in Tennessee must fall under these statutory provisions. *See In Hickey*, 149 Tenn. 344, 258 S.W. 417, 425 (1924); *Scott v. State*, 109 Tenn. 390, 71 S.W. 824, 825 (1902); *State v. Galloway*, 45 Tenn. 326, 329 (1868).

The distinctions in the types of contempt, as well as the statutory basis for a contempt conviction, are critical for determining the applicable procedures. In this regard, Rule 42 of the Tennessee Rules of Criminal Procedure provides:

---

7. *See generally*, Ellis, *The Contempt Powers of* Tennessee Courts, 37 Tenn.L.Rev. 538 (1970).

(a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that [the judge] saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) Disposition upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the district attorney general or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the hearing except with the defendant's consent. Upon a verdict of finding of guilt the court shall enter an order fixing the punishment.

*See also State v. Maddux, 571 S.W.2d at 821.*

### B.

In this case, the trial judge certified appellant's conduct was contemptuous using the summary procedure in Rule 42(a). On its face, the rule establishes two prerequisites to imposition of summary punishment: the conduct must have been in the presence of the trial court and the court must certify that it saw or heard the conduct in question and must enter an appropriate order. Nonetheless, it is evident from statute and case law

that other considerations are relevant to the use of summary punishment.[8]

■ First, as noted above, the contemptuous conduct must fall within a statutory provision, which, in the case of direct criminal contempts, is generally Tennessee Code Annotated Section 29-9-102(1). *See, e.g., State v. Jones,* 726 S.W.2d 515, 519 (Tenn.1987); *In re Hickey,* 258 S.W. at 425. Thus, the conduct must have been "willful," and it must have caused an actual obstruction of the administration of justice. *Robinson v. Air Draulics Engineering Co.,* 214 Tenn. 30, 377 S.W.2d 908, 911–12 (1964); *see also Harwell v. State,* 78 Tenn. 544, 546 (1882); *State v. Creasy,* 885 S.W.2d at 833.

■ Second, and equally as important, the summary contempt authority must be viewed in light of its express purpose and function. Tennessee's summary contempt mechanism, like its federal counterpart, Fed. R.Crim.P. 42,[9] is designed to punish certain conduct when necessary to vindicate the dignity and authority of the court. *Shiflet v. State,* 400 S.W.2d at 543. *Robinson v. Air Draulics,* 377 S.W.2d at 911–12; *State ex rel May v. Krichbaum,* 152 Tenn. 416, 278 S.W. 54, 55 (1925); *see also Cooke v. United States,* 267 U.S. 517, 534, 45 S.Ct. 390, 394, 69 L.Ed. 767 (1925); *United States v. Flynt,* 756 F.2d 1352, 1362 (9th Cir.1985), *as mod'd,* 764 F.2d 675 (9th Cir.1985). Thus, it may be invoked when there is a need to "act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a criminal trial." *United States v. Wilson,* 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975); *see Sacher v. United States,* 343 U.S. 1, 9–10, 72 S.Ct. 451, 455, 96 L.Ed. 717 (1952); *Bloom v. Illinois,* 391 U.S. 194, 202, 88 S.Ct. 1477, 1482, 20 L.Ed.2d 522 (1968); *Ex Parte Terry,* 128 U.S. 289, 313, 9 S.Ct. 77, 82, 32 L.Ed. 405 (1888); *In re Hickey,* 258

---

**8.** *See generally,* Note, *Summary Proceedings in Direct Contempt Cases,* 15 Vand.L.Rev. 241 (1961).

**9.** We note that the federal rule is worded identically to the Tennessee rule; thus, we find that numerous opinions of the United States Supreme

Court and federal courts of appeal are persuasive authority. *See generally* Annotation, *Attorneys Conduct as Justifying Summary Contempt Under Rule 42(a) of the Federal Rules of Criminal Procedure,* 58 A.L.R. Fed 1 (1982) & (1994 Supp.).

S.W. at 425. In *Codispoti v. Pennsylvania,* 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974), the United States Supreme Court said:

> There are recurring situations where the trial judge, to maintain order in the courtroom and the integrity of the trial process in the face of an "actual obstruction of justice," ... convicts and sentences the accused or the attorneys for either side for various acts of contempt as they occur. Undoubtedly, where the necessity of circumstances warrants, a contemnor may be summarily tried for an act of contempt during trial and punished....

*Codispoti v. Pennsylvania,* 418 U.S. at 513–14, 94 S.Ct. at 2692 (1974) (citations omitted); *see also State v. Krichbaum,* 278 S.W. at 55.

■ Concomitant with the court's authority, however, has been the recognition that summary punishment departs, often dramatically, from traditional notions of due process that are the hallmarks of criminal justice. Consequently, it is reserved for those circumstances in which it is essential.

> [The] reluctance to expand the power of summary contempt beyond the situations where its use is necessary reflects the extraordinary nature of the power itself.... *[S]ummary disposition under Rule 42(a) [of the Federal Rules of Criminal Procedure] dispenses with notice and an opportunity to be heard in defense, rights that are rooted in the due process guarantee and that are "basic in our system of jurisprudence."* Given the absence of these procedural safeguards and given the reality that contemptuous conduct "often strikes at the most vulnerable and human qualities of a judge's temperament," the power of summary contempt is capable of grave abuse, and is properly regarded by the courts with extreme disfavor.

*United States v. Moschiano,* 695 F.2d 236, 250 (7th Cir.1982), *cert. denied,* 464 U.S. 831, 104 S.Ct. 110, 78 L.Ed.2d 111 (1983) (citations omitted) (emphasis added); *see also United States v. Flynt,* 756 F.2d at 1363 ("otherwise inconsistent functions of prosecutor, jury and judge are united in one individual"). As a result, courts universally agree that summary contempt powers should be used sparingly, and even then only in cases of "exceptional circumstances." *Harris v. United States,* 382 U.S. 162, 164–65, 86 S.Ct. 352, 354, 15 L.Ed.2d 240 (1965); *see also Cooke v. United States,* 267 U.S. at 539, 45 S.Ct. at 396 ("[i]ts exercise is a delicate one and care is needed to avoid arbitrary or oppressive conclusions"); *Sacher v. United States,* 343 U.S. at 8, 72 S.Ct. at 454 (regarded with disfavor); *United States v. Moschiano,* 695 F.2d at 251 (extreme disfavor); *In re Gustafson,* 619 F.2d 1354, 1359 (9th Cir. 1980) (compelling need). Likewise, our supreme court has cautioned that summary contempt procedures should "not be used unless the case clearly calls for its exercise." *Robinson v. Air Draulics,* 377 S.W.2d at 911–12; *see also State v. Green,* 783 S.W.2d 548, 550 (Tenn.1990).

■ The determination of exceptional circumstances has been left to the discretion of the trial courts. *See, e.g., Robinson v. Air Draulics,* 377 S.W.2d at 912; *see also In re McDonald,* 819 F.2d 1020, 1024 (11th Cir. 1987); *United States v. Flynt,* 756 F.2d at 1362; *United States v. Moschiano,* 695 F.2d at 251–52; *United States v. Mars,* 553 F.2d 508, 508 (6th Cir.1977). It would certainly include "acts threatening the judge or disrupting a hearing or obstructing court proceedings," *Harris v. United States,* 382 U.S. at 164, 86 S.Ct. at 354, or other "unusual situations ... where instant action is necessary to protect the judicial institution itself." *Id.*[10] To provide further guidance in this regard, the court in *In re Gustafson, supra,*

---

**10.** Although these broad descriptions are most analogous to the present case, we recognize that other types of conduct may also be summarily punished. In *United States v. Wilson,* for example, the Court specifically noted that federal Rule 42(a) "was never intended to be limited to situations where a witness uses scurrilous language, or threatens or creates overt physical disorder and thereby disrupts a trial." *United States v. Wilson,* 421 U.S. 309, 314–15, 95 S.Ct. 1802, 1805–06, 44 L.Ed.2d 186 (1975). In *Wilson,* the

considered such factors as the reasonably expected reactions of those in the courtroom, the manner in which the remarks are delivered, the delay in the proceedings caused by a disrespectful outburst, and the failure to heed explicit directives of the court. *Id.* at 1359; *see also United States v. Pina,* 844 F.2d 1, 14 (1st Cir.1988); *In re Holloway,* 995 F.2d 1080, 1087 (D.C.Cir.1933), *cert. denied,* —— U.S. ——, 114 S.Ct. 1537, 128 L.Ed.2d 190 (1994); 17 C.J.S. Contempt § 2 & § 25 (1963 & 1994 Supp.).

Our courts have interpreted direct criminal contempts under Tennessee Code Annotated Section 29–2–102(1) in a similar nature. For example, our courts have condemned "disrespectful, unreasonable or contemptuous conduct in the presence of the court," *State v. Jones,* 726 S.W.2d at 519, "clamorous and violent language" in the presence of the court, *Harwell v. State,* 78 Tenn. at 546, and "turbulent conduct" in the presence of the court, or so near thereto, as to interrupt the proceedings, *id..* The supreme court has also said that subsection 102(1) "relates to direct personal misbehavior, for example, loud speaking or making any noise in the courtroom or so near thereto as to interfere with the procedure of the court...." *Hickey,* 258 S.W. at 425.

▆▆▆ In sum, courts exercising summary contempt power must consider, in addition to the facial requirements of Rule 42(a), the nature of the conduct, its effect, if any, on the administration of justice, and the overall purpose of Rule 42(a) proceedings. Acts of willful disobedience or disrespectful conduct, by their nature, pose the risk of obstructing the administration of justice.

### C.

There are yet additional considerations where, as here, the contemnor is counsel for a litigant in the underlying proceedings. The United States Supreme Court has said:

[A court has a] duty to safeguard two indispensable conditions to the fair admin-

istration of criminal justice: (1) counsel must be protected in the right of an accused to "fearless, vigorous and effective" advocacy, no matter how unpopular the cause in which it is employed; (2) equally so will this Court "protect the processes of orderly trial, which is the supreme object of the lawyer's calling."

*Offutt v. United States,* 348 U.S. 11, 13, 75 S.Ct. 11, 13, 99 L.Ed. 11 (1954) (quoting *Sacher v. United States,* 343 U.S. at 13–14, 72 S.Ct. at 457)). These competing interests, and the appropriate balance between them, were underscored in *In re McConnell,* 370 U.S. 230, 236, 82 S.Ct. 1288, 1292, 8 L.Ed.2d 434 (1962). There an attorney was summarily held in contempt after vigorously proposing to ask questions of a witness in defiance of the district court's ruling. The Supreme Court reversed:

While we appreciate the necessity for a judge to have the power to protect ... from actual obstruction in the courtroom, or even from conduct so near to the court as actually to obstruct justice, it is also essential to a fair administration of justice that lawyers be able to make honest good-faith efforts to present their clients' cases. An independent judiciary and a vigorous, independent bar are both indispensable parts of our system of justice. To preserve the kind of trials that our system envisages, Congress has limited the summary contempt power vested in courts to the least possible power adequate to prevent actual obstruction of justice....

▆▆▆ The concern in any direct criminal contempt proceeding handled in summary fashion is the risk that the judge will become embroiled in personal antagonisms with the condemned party. *See Offutt v. United States,* 348 U.S. at 17, 75 S.Ct. at 15. The concern is particularly great where the conduct in question amounts to a personal attack or insulting behavior. *See Mayberry v. Pennsylvania,* 400 U.S. 455, 463–65, 91 S.Ct. 499, 504–05, 27 L.Ed.2d 532 (1971). "[C]ontemptuous conduct, though short of personal

contemnor was summarily punished for refusing    to testify after the grant of immunity. *Id.*

attack, may still provoke a trial judge and so embroil [the judge] in controversy that [the judge] cannot 'hold the balance nice, clear, and true between the state and the accused....' " *Taylor v. Hayes,* 418 U.S. 488, 501, 94 S.Ct. 2697, 2704, 41 L.Ed.2d 897 (1974) (quoting, *Tumey v. Ohio,* 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927)). Due process, therefore, demands caution in summary contempt procedures aimed at vindicating conduct directed toward the judge.

> The power ... entrusted to a judge is wholly unrelated to ... personal sensibilities, be they tender or rugged. But judges also are human, and may, in a human way, quite unwittingly identify offense to self with obstruction to law.

*Offutt,* 348 U.S. at 14, 75 S.Ct. at 13; *see also Cooke v. United States,* 267 U.S. at 539, 45 S.Ct. at 396 ("caution is ... mandatory where the contempt charged has in it the element of personal criticism or attack upon the judge"); *In re McDonald,* 819 F.2d at 1024 (balancing due process interest).

▮ Accordingly, while extreme cases still may warrant use of summary contempt punishment, the court have evinced a preference for proceedings that involve notice, a hearing, and even, a different judge.[11] In *Offutt,* the Court noted that it has "deemed it important that district judges guard against ... easy confusion by not sitting themselves in judgment upon misconduct of counsel where the contempt charged is entangled with the judge's personal feeling against the lawyer." *Id.* at 14, 75 S.Ct. at 13; *see Taylor v. Hayes,* 418 U.S. at 501, 94 S.Ct. at 2704; *Mayberry v. Pennsylvania,* 400 U.S. at 464, 91 S.Ct. at 504; *Cooke v. United States,* 267 U.S. at 539, 45 S.Ct. at 395.[12]

Tennessee courts echoed these sentiments in a leading contempt case that found its way into published opinions by both the supreme court and this court. *See State v. Green,* 783 S.W.2d 548 (Tenn.1990); *State v. Green,* 708 S.W.2d 424 (Tenn.Crim.App.1986). There, counsel in a first-degree murder trial was cited for five contempts. The acts consisted of (1) being late for a pretrial hearing; (2) jerking a chair in court; (3) suggesting that the trial judge was assisting the state during voir dire; (4) intimating during the trial that the prosecutor might be suffering from mental instability; and (5) stating to the trial judge that the contempt orders "were another example of the court's arbitrary, unfair and extremely prejudicial conduct...." *State v. Green,* 783 S.W.2d at 548–49.

On initial appeal, this court characterized all five contempts as "summary contempt judgments;" however, the court also noted that only the latter four acts occurred in the presence of the trial court. *See* Tenn. R.Crim.P. 42(a). This court described the "acrimonious atmosphere" that permeated the trial between the trial judge, defense counsel, and the prosecutor. The court also noted that at the time of the trial, and the contempts orders, there was a separate pending case in which the same trial judge had held defense counsel in contempt. Thus, the court concluded that the matter of the five contempt convictions should be remanded to the trial court for a hearing before a different judge:

> Both the case law and Tennessee Rules of Criminal Procedure 42(b),[13] which has the force of law, mandate that another judge be appointed to preside at a hearing on these charges. In *Taylor v. Hayes,* 418

---

**11.** This is particularly so where a court has deferred the imposition of punishment for conduct during trial until after the trial has concluded. In such circumstances, the need for summary proceedings has diminished. *Taylor v. Hayes,* 418 U.S. at 501, 94 S.Ct. at 2704; *Mayberry v. Pennsylvania,* 400 U.S. at 465, 91 S.Ct. at 504; *Offutt v. United States,* 348 U.S. at 14, 75 S.Ct. at 13. *But see Sacher v. United States,* 343 U.S. at 11, 72 S.Ct. at 456.

**12.** The more elaborate procedures and protections where conduct involves "disrespect to or

criticism of" a judge are built into Tennessee Rules of Criminal Procedure 42(b). This provision, however, is limited generally to indirect contempts, or those that occur outside the presence of the court.

**13.** As noted in note 12 *supra,* this subpart which specifically disqualifies the trial judge from presiding does not apply to direct criminal contempts.

U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), the [C]ourt commented that contemptuous conduct, though short of personal attack, may still provoke a trial judge and so embroil him in controversy that it would be difficult to maintain the calm detachment necessary for fair adjudication. In making this ultimate judgment, the inquiry must not only be whether there was actual bias on the judge's part, but also whether there was such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interest of the court and the interest of the accused.... At least three of the contempt judgments ... appear to involve disrespect to or criticism of the trial judge. *We conclude that in order to avoid the possibility of any appearance of bias that all the charges involved should be considered by some judge other than the trial judge involved in this case.*

*State v. Green,* 708 S.W.2d at 427 (emphasis added).

Even though four of the alleged contemptuous acts were committed in the court's presence, this court created a remedy akin to the procedure in Tennessee Rules of Criminal Procedure 42(b). Concerned with the potential bias of the trial judge and the fact that several of the contempts involved disrespect to or criticism of the judge, both of which are components of Rule 42(b), the court remanded for proceedings before a different judge. A successor judge heard additional testimony and reviewed the transcript of the proceedings. The contempt judgments and sentences were upheld. A panel of this court affirmed on direct appeal. *State v. Green,* 1988 WL 123986 (Tenn.Crim.App., Knoxville, Nov. 21, 1988) (no number in original).

The supreme court, however, granted permission to appeal and dismissed all five contempts. *State v. Green,* 783 S.W.2d at 553. In doing so, the court dealt extensively with its concern that the trial judge who had imposed the contempts has a "likely basis ... for personal antagonism" against coun-

sel, and appeared to have become personally entangled in the matter. *Id.* at 550 (citing, *Offutt, supra,* 348 U.S. at 14, 75 S.Ct. at 13). In this regard, the court noted that the trial judge had previously cited counsel for contempt, had reported counsel to the Board of Professional Responsibility, and had disclosed counsel's confidential response to the Board's inquiry to the district attorney general. Finally, the court concluded that defense counsel had not acted willfully, nor had his acts obstructed the administration of justice. *Id.* at 553. The court did not, however, discuss the extent of summary contempt power under Rule 42(a), nor did it set forth explicitly when, if ever, the procedures governing indirect contempts in Rule 42(b) should apply to direct contempts.

### III.

#### A.

In applying the foregoing statutes, case law, and principles to the present case, we are hindered somewhat by the scant nature of the record and the lack of a verbatim transcript. We are concerned that the trial judge, as required by the Tennessee Rules of Appellate Procedure, was the sole arbiter of whether the statement of evidence accurately reflected what transpired in the trial court with regard to the judgments of contempt. The concerns of basis fairness outlined in *Offutt* and *Green* are potentially implicated where, due to the lack of a verbatim transcript, a statement of the evidence must be approved by the very trial judge who summarily issued the contempt convictions that are the basis for the appeal.

▮ Yet we are not persuaded to discount the approved statement of the evidence in this case for several reasons. First, the process for using a statement of the evidence in lieu of a verbatim transcript is set forth Rule 24(c) and was followed in this case; second, a judge of this court specifically ordered the parties to proceed according to Rule 24(c) and ordered the trial judge to resolve any disputes according to Rule 24(e);

third, the order approving the statement of the evidence was signed by the trial judge, the prosecutor, and counsel for appellant; fourth, the objection to the statement of evidence filed by appellant did not specifically contest the accuracy of its content with any particularity; and fifth, the issue has not been pursued by appellant on appeal.[14] *See, e.g.,* 17 C.J.S. Contempt § 122 (1963 & 1994 Supp.).

■ With some hesitancy, we affirm the summary disposition of the direct criminal contempts in this case. In doing so, we do not intend to undermine the importance of trial judges recusing themselves when the accepted contemptuous conduct attacks the judge. Recusal is always preferred, unless it would result in prejudicial or injurious delay. Conversely, we are mindful that a judge must have the power to assure that court proceedings are not hampered by undignified, contemptuous misbehavior. The circumstances here, however, are truly extraordinary, and hopefully not likely to reoccur. A remand would produce the same divergent testimony that the statements of evidence contained. There is no transcript to clarify the conflicts.

Further, based upon the record before us, we affirm the findings that appellant engaged in willful misbehavior in the presence of the court and uphold the three judgments of contempt. The record reflects counsel's distemper in response to a ruling of the trial judge and his apparent refusal to gain control of himself. It further reflects an escalating confrontation in which appellant had to be physically removed from the courtroom. The conduct resulted not only in the temporary delay of the trial for purposes of removing the jury, but also in the mistrial of the proceedings. We have no difficulty concluding that appellant's conduct was willful and that its effect obstructed the administration of justice. Given this direct confrontation with the trial judge and this display of bois-

terous conduct which required removal from the courtroom, we find that the trial court did not abuse its discretion in invoking summary contempt procedures. *See Cooke v. United States,* 267 U.S. at 539, 45 S.Ct. at 395; *United States v. Pina,* 844 F.2d at 14; *In re Holloway,* 995 F.2d at 1087; *United States v. Ruggiero,* 835 F.2d 443, 446 (2nd Cir.1987); *State v. Jones,* 726 S.W.2d at 519; *Harwell v. State,* 78 Tenn. at 546.

■ We further conclude that appellant's conduct amounted to three separate and distinct acts of contempt committed in succession. *See* 17 C.J.S. Contempt § 100 (1963) & (1994 Supp.). The initial contempt was predicated on an act that occurred in the presence of the jury, disrupted the trial, and led to removal of the jury from the courtroom. The second contempt was premised on appellant's attempt to leave the courtroom and his continued disrespectful remarks and baiting of the trial judge. The third contempt was premised on appellant's continued refusal to gain control of himself and the need to ultimately remove him from the courtroom. *See, e.g., People v. Brown,* 235 Ill.App.3d 945, 176 Ill.Dec. 682, 685, 601 N.E.2d 1380, 1383 (1992); *State v. Gonzalez,* 134 N.J.Super. 472, 341 A.2d 694, 697 (1975); *see also State v. Driscoll,* 89 N.M. 541, 555 P.2d 136, 141 (1976). In this regard, we find that *Grant v. State,* 213 Tenn. 440, 374 S.W.2d 391, 393 (1964) is both distinguishable and instructive. There counsel was cited for four contempts for urging four witnesses to commit perjury. On appeal, the supreme court noted that counsel spoke to all four witnesses on the same occasion; thus, the court concluded the conduct amounted to one, and not four, acts of contempt. *Id.* The present case, by contrast, involves separate, successive acts of contempt. *See People v. Brown,* 176 Ill.Dec. at 685, 601 N.E.2d at 1383.

### B.

While neither party has raised sentencing issues in this case, we make several observations for the benefit of the bench and the bar.

---

**14.** As previously noted, appellant's objection filed with the trial court cited the "exceptional circumstances" exception in Tennessee Rules of Appellate Procedure 24(e). It appears, however, that this exception pertains to death or unavailability of the trial judge. *See Artrip v. Crilley,* 688 S.W.2d 451, 453 (Tenn.App.), *perm. to appeal denied,* (Tenn.1985).

First, we note that the judge imposed maximum consecutive sentences for each act of contempt. A trial judge is specifically authorized to order consecutive sentences for criminal contempt convictions. Tenn.Code Ann. § 40–35–115(b)(7) (1990 Repl.). Although we question whether the aggregate sentence in this case exceeds that which is necessary and appropriate, neither side has raised that issue on appeal.

Secondly, we note that judges making summary contempt findings are not required to impose an immediate sentence. As in all sentencing issues, judges should exercise appropriate reflection and deliberation before determining punishment. In most cases, the contemnor should be given an opportunity to address the court before imposition of sentence. *See Taylor v. Hayes*, 418 U.S. 488, 498, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974) ("[e]ven where summary punishment for contempt is imposed during trial, 'the contemnor has normally been given an opportunity to speak in his own behalf in the nature of a right to allocution.' "); A.B.A. Standards for Criminal Justice § 6–4.4 (2d ed. 1980 & 1986) ("[b]efore imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt or punishment.").

As we have noted, however, neither party has challenged the sentences in this case. Accordingly, we affirm the imposition of the effective thirty day sentence and $150 fine.

HAYES, J., and JOHN H. GASAWAY, III, Special Judge, concur.