# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

**February 26, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

JULIA JONES,                           )
                                       )
    Plaintiff/Appellee,        )
                                       )   Sumner Circuit
                                       )   No. 14204-C
VS.                                    )
                                       )   Appeal No.
                                       )   01A01-9607-CV-00346
SAMUEL ROBERT JONES, JR.,              )
                                       )
    Defendant/Appellant.       )

APPEAL FROM THE CIRCUIT COURT FOR SUMNER COUNTY
AT GALLATIN, TENNESSEE

THE HONORABLE THOMAS GOODALL, JUDGE

For the Plaintiff/Appellee:

No Appearance

For the Defendant/Appellant:

John R. Phillips, Jr.
PHILLIPS & INGRUM
Gallatin, Tennessee

## VACATED IN PART; MODIFIED IN PART; AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# **O P I N I O N**

This appeal involves a venomous custody and visitation dispute. While the appeal involving the original divorce decree was pending in this court, both parents filed a contempt petition in the Circuit Court for Sumner County alleging that their former spouse was improperly interfering with their visitation rights. Following a bench trial, the trial court sentenced the husband to ten days in jail for "willful civil contempt." We have determined that the contempt proceeding against the husband actually involved criminal contempt and, therefore, that the judgment for contempt must be vacated because of failure to comply with the procedural requirements in Tenn. R. Crim. P. 42.

## I.

Samuel R. Jones, Jr. and Julia Jones had four children[1] during their troubled nineteen-year marriage. The children bore the brunt of their parents' discord during the marriage, and custody and visitation became the primary battleground after Ms. Jones filed for divorce in May 1995.[2] Following hearings in June and September 1995, the trial court entered a final divorce decree granting the parties joint custody but giving Mr. Jones physical custody of the two older children and Ms. Jones physical custody of the two younger children. Despite the obvious fact that Mr. and Ms. Jones were openly competing for the hearts and minds of their children, the trial court left the visitation arrangements to the parties.

Mr. Jones appealed the divorce decree to this court. While that appeal was pending, he requested the trial court to grant him specific visitation rights. The trial court entered an order on December 13, 1995, that specifically delineated Mr. Jones's specific visitation rights with the two younger children. Mr. Jones filed

---

[1]The children were born between 1978 and 1984. Their only daughter has reached the age of majority; while their three sons are between twelve and seventeen years old.

[2]The details of this conduct are contained in our earlier opinion concerning the original custody decree and need not be repeated here. *See Jones v. Jones*, App. No. 01A01-9601-CV-00038, 1996 WL 512030 (Tenn. Ct. App. Sept. 11, 1996) (No Tenn. R. App. P. 11 application filed).

another petition two days later seeking to hold Ms. Jones in contempt for refusing to permit him to visit with the two younger children. The trial court entered an order on December 20, 1995, finding that Ms. Jones had not complied with its earlier visitation order and stating further that:

> 5. If either party fails to comply completely with the Order of this Court, said party shall be held in contempt of this Court and punished accordingly.
>
> 6. If any child of the parties fails to comply completely with the Order of this Court, said violation will result in an unruly child petition being filed in Juvenile Court against the children or child who does not comply with this Court's Order. The Juvenile Court of the county in which said child or children reside will have jurisdiction over the children.

Despite the trial court's best intentions, the parents' internecine battle for the children continued unabated. Ms. Jones answered Mr. Jones's contempt petition with a contempt petition of her own asserting that Mr. Jones had not forced the two older children to visit her and had not filed petitions seeking to have them dealt with as unruly children. Following a brief hearing, the trial court determined that Mr. Jones had not complied with its December 20, 1995 order because he had not forced the two older children to have "meaningful visitation" with their mother. Accordingly, the trial court entered an order on April 3, 1996, finding that Mr. Jones had committed "willful civil contempt" and sentencing him to ten days in the Sumner County jail. Mr. Jones perfected another appeal to this court.[3]

## II.

The threshold issue in every appeal from a finding of contempt is whether the contempt is civil or criminal. *Sanders v. Sanders,* App. No. 01A01-9601-GS-00021, 1997 WL 15228, at *2 (Tenn. Ct. App. Jan. 17, 1997). The answer turns on the conduct involved and the sanctions imposed, not on the labels of "civil" or "criminal" affixed by the parties or the trial court. *Sherrod v. Wix,* 849 S.W.2d

---

[3]This court handed down a decision in Mr. Jones's first appeal on September 11, 1996. While we affirmed the trial court's decision with regard to physical custody, we vacated the joint custody award because of the overwhelming evidence of the parties' inability to agree upon anything relating to their children. *Jones v. Jones, supra* note 2, 1996 WL 512030, at * 5.

780, 786-87 (Tenn. Ct. App. 1992) (treating proceeding as one for criminal contempt even though the trial court characterized it as a civil contempt proceeding); *In re Rigney*, App. No. 89-129-III, 1990 WL 20803, at *5 (Tenn. Crim. App. Mar. 8, 1990) (No Tenn. R. App. P. 11 application filed).

Determining whether contemptuous conduct constitutes civil or criminal contempt can sometimes be difficult because "particular acts do not always readily lend themselves to classification as civil or criminal contempts[.]" *Nye v. United States,* 313 U.S. 33, 42, 61 S. Ct. 810, 813 (1941). Yet, we must make the distinction unequivocally because doing so determines the procedure to be followed and the constitutional protections to be afforded the alleged contemner. *State v. Turner,* 914 S.W.2d 951, 955 (Tenn. Crim. App. 1995); *Storey v. Storey,* 835 S.W.2d 593, 599 (Tenn. Ct. App. 1992); Philip A. Hostak, Note, *International Union, United Mine Workers v. Bagwell: A Paradigm Shift in the Distinction Between Civil and Criminal Contempt*, 81 Cornell L. Rev. 181, 191 (1995). As a general matter, a person facing criminal punishment is entitled to greater procedural safeguards than a party in a civil suit. *Fell v. Armour*, 355 F. Supp. 1319, 1331 (M.D. Tenn. 1972).

The purpose of a civil contempt proceeding is to coerce the contemner to comply with a court's order. It is a remedial proceeding, *Robinson v. Gaines,* 725 S.W.2d 692, 694 (Tenn. Crim. App. 1986), and is intended to benefit the party seeking the contempt order. *State ex rel. Agee v. Chapman,* 922 S.W.2d 516, 519 (Tenn. Ct. App. 1995). Civil contempt sanctions are open-ended and terminate when the contemner complies with the court's order. In this sense, the contemner "carries the keys to the jail in his or her own pocket." *State ex rel. Anderson v. Daugherty,* 137 Tenn. 125, 127, 191 S.W. 974, 974 (1917); *Crabtree v. Crabtree,* 716 S.W.2d 923, 925 (Tenn. Ct. App. 1986).

On the other hand, the purpose of a criminal contempt proceeding is to vindicate the authority of the law and the court. *State ex rel. Chapman v. Agee,* 922 S.W.2d at 519; *Thigpen v. Thigpen,* 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). It is a punitive proceeding intended to impose a fixed punishment for past actions. *Sitton v. Finley,* 743 S.W.2d 933, 935 (Tenn. Crim. App. 1987). Punishment for

criminal contempt is not conditional and must be served even if the contemner later complies with the court's order. *Robinson v. Gaines,* 725 S.W.2d at 694.

The trial court sentenced Mr. Jones to a fixed term of ten days in the Sumner County jail and did not condition his release upon compliance with any of its decrees or orders pertaining to custody or visitation. The ten day sentence was the maximum period of incarceration for criminal contempt permitted by Tenn. Code Ann. § 29-9-103(b) (Supp. 1996). Even though the trial court characterized Mr. Jones's contempt as "willful civil contempt," the trial court was obviously punishing Mr. Jones for not following its December 20, 1995 order. Accordingly, we find that this was a criminal contempt proceeding.

### III.

Criminal contempt is either direct or indirect. Disruptive or disobedient acts committed in the court's presence constitute direct criminal contempt. *Black v. Blount*, App. No. 02S01-9604-CV-00044, 1996 WL 732068 at *4 (Tenn. Dec. 23, 1996); *State v. Maddux*, 571 S.W.2d 819, 821 (Tenn. 1978); Tenn. Code Ann. § 29-9-102(1) (1980). Trial courts may impose summary punishment for these acts when there is a need to act swiftly and firmly to prevent contumacious conduct from disrupting a judicial proceeding. *State v. Turner,* 914 S.W.2d at 956. Contemptuous acts committed outside of the court's presence constitute indirect criminal contempt. *State v. Maddux,* 571 S.W.2d at 821; *State v. Turner,* 914 S.W.2d at 955. Trial courts may impose punishment for indirect criminal contempt only after providing notice pursuant to Tenn. R. Crim. P. 42(b). Like all persons charged with contempt, persons facing an indirect criminal contempt charge are entitled to the presumption of innocence, the privilege against self-incrimination, and the requirement that their guilt be proven beyond a reasonable doubt. *Sanders v. Sanders, supra,* 1997 WL 15228, at *3.

The Tenn. R. Crim. P. 42(b) notice must specifically charge a party with criminal contempt and must succinctly state the facts giving rise to the charge. Because the same conduct can constitute both civil and criminal contempt, the Tenn. R. Crim. P. 42(b) notice eliminates any possible confusion concerning the

nature of the proceeding. Providing this notice at an early stage better enables the alleged contemner to invoke his or her procedural rights. *United States v. United Mineworkers,* 330 U.S. 258, 374, 67 S. Ct. 677, 736 (1947) (Rutledge, J., dissenting) (stating that "[o]ne who does not know until the end of litigation what his procedural rights in trial are, or may have been, has no such rights").

We have vacated a number of criminal contempt sanctions during the past few years because of procedural shortcomings stemming from inadequate Tenn. R. Crim. P. 42(b) notice. *See e.g., Sanders v. Sanders, supra*; *Pritchard v. Pritchard*, App. No. 02A01-9505-CH-00108, 1996 WL 266653 (Tenn. Ct. App. May 15, 1996) (No Tenn. R. App. P. 11 application filed); *Walker v. Walker*, App. No. 02A01-9209-CH-00263, 1993 WL 327826 (Tenn. Ct. App. Aug. 20, 1993) (No Tenn. R. App. P. 11 application filed); *Storey v. Storey*, 835 S.W.2d 593 (Tenn. Ct. App. 1992). While it is commendable that the courts in the Eighteenth Judicial District are using informal practice guidelines to address this problem, we note that no judicial district has yet adopted a local rule or proposed form to assure that adequate Tenn. R. Crim. P. 42 notice is given in proceedings where it is required. Such a rule could greatly diminish the risk of confusion concerning the nature and purpose of a contempt proceeding, not just in domestic relations cases but in all cases.

Ms. Jones's counter-petition for contempt asserted that Mr. Jones had violated the trial court's previous visitation orders but did not provide the notice required by Tenn. R. Crim. P. 42(b). Thus, from the outset, the purpose and nature of this proceeding were ambiguous. On one hand, the petition could have been intended to punish Mr. Jones for willfully defying the trial court's visitation orders. On the other hand, it could have been intended to force Mr. Jones to conform his conduct to the trial court's past and future orders. *See Hicks v. Feiock,* 485 U.S. 624, 638-39, 108 S. Ct. 1423, 1433 (1988).

This record raises serious doubts concerning whether Mr. Jones understood that Ms. Jones's counter-petition exposed him to possible criminal contempt sanctions. It is unlikely that Mr. Jones would have made so many incriminating admissions had he been aware of his privilege against self-incrimination. Without

Mr. Jones's admissions, the record contains insufficient evidence to support a finding of criminal contempt beyond a reasonable doubt because Ms. Jones's testimony concerning her two older children was little more than speculation.

Penalties for criminal contempt cannot be imposed on someone who has not been afforded the protections that the state and federal constitutions require in criminal proceedings. *See Hicks v. Feiock,* 485 U.S. at 632, 108 S. Ct. at 1429-30. The contempt punishment Mr. Jones received in this case must be vacated because he did not receive the notice required by Tenn. R. Crim. P. 42(b) and because the trial court failed to provide him with the procedural safeguards due to persons facing criminal contempt sanctions. *See Sanders v. Sanders, supra,* 1997 WL 15228 at *4; *Storey v. Storey,* 835 S.W.2d at 600.

## IV.

As a final matter, we must address one substantive aspect of the trial court's December 20, 1995 and April 3, 1996 orders. The trial court apparently believed that "meaningful visitation" could repair the breach between Ms. Jones and her older children. Accordingly, it directed the two older children to visit their mother and threatened them with juvenile court sanctions if they refused. The trial court also directed Mr. Jones to require the children to visit their mother and threatened him with contempt if he failed to do so. These remedies are entirely inappropriate in cases of this nature.

Custody and visitation issues touch the homes, hearths, and hearts of emotionally vulnerable children and adults. The sensitive circumstances of a family broken apart by divorce require restraint and understanding rather than heavy handed, authoritarian intervention. Thus, custody and visitation orders should reflect the realities of all family members and should promote conduct that is reasonable in light of all the circumstances. They should be detailed enough to enable the parties to understand precisely what the court expects of them and what the consequences of their failure to abide by the court's order will be.

Meaningfulness is a vague and subjective concept. Visitation that might be considered meaningful by some might not be considered meaningful by others. No consistently reliable basis exists for determining whether a particular visit was meaningful or not. Accordingly, meaningfulness does not provide a workable standard for visitation arrangements because it fails to inform the parties of the precise conduct expected of them.

There are also practical limits on a court's ability to restore the bonds of trust and affection in dysfunctional families. Most courts do not have the resources or expertise for this type of sustained intervention. Coerced visitation is rarely meaningful and usually drives family members farther apart. Accordingly, courts should avoid attempting to force meaningful relationships upon parents and children who have been alienated from each.

The trial court went too far when it ordered the children to have "meaningful visitation" and when it required the parents to coerce the children to comply with the visitation schedule. Accordingly, we modify the trial court's visitation and custody decrees by deleting both the requirement that visitation be "meaningful" and the parents' obligation to commence unruly child proceedings if the children do not cooperate with visitation. Since the parties' oldest child has now reached the age of majority, the parties' only remaining obligations are to refrain from disparaging each other in the presence of their children and to cooperate with their respective efforts to have visitation in the manner prescribed by the trial court. The parents should not be required to force their children to engage in visitation against their wishes.

## V.

We vacate the order finding Mr. Jones to be in contempt and sentencing him to serve ten days in the Sumner County jail. We also modify the visitation orders in accordance with this opinion and remand the case to the trial court for further proceedings consistent with this opinion. The costs of this appeal are taxed in equal proportions to Samuel R. Jones, Jr. and his surety and to Julia Jones for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
SAMUEL L. LEWIS, JUDGE

_____
BEN H. CANTRELL, JUDGE