**STATE of Tennessee, Appellee,**

v.

**Bob McD. GREEN, Appellant.**

Supreme Court of Tennessee,
at Knoxville.

Jan. 22, 1990.

John T. Milburn Rogers, Greeneville, Joe B. Jones (At trial), Memphis, for appellant.

Lynn Brown, Asst. Dist. Atty. Gen., Elizabethton, Charles W. Burson, Atty. Gen. and Reporter, Kathy Principe, Asst. Atty. Gen., Nashville, for appellee.

OPINION

FONES, Justice.

Defendant, Bob McD. Green, a member of the Washington County Bar, was convicted of five separate acts of contempt of court, committed during his representation of Vesper Denton Hicks who was charged with murder in the first degree.

The first trial of *State v. Hicks* resulted in a mistrial. The case was set for a second trial on 1 November 1983 and pretrial motions were set for 31 October 1983 at Jonesborough, Tennessee. Court opened at 9:00 a.m. and Green did not arrive until 9:55 a.m., although an associate was present at 9:00 a.m. Judge Hill summarily found Green in contempt for his late arrival. On 9 November 1983 the assistant district attorney, Mooney, objected to testimony of defendant's witness, a Charter Life Underwriter, to explain how a buy-sell agreement works in a closely held corporation. The jury was sent to the jury room, and after a lengthy colloquy Judge Hill sustained the objection, "until it is shown that this defendant knew it." Green then charged that the court allowed the state to put in proof "no matter how far afield" and excluded defendant's "competent proof going to the direct issues in this case." A second summary contempt of court judgment was promptly imposed "for your actions of jerking a chair around and making accusations as to my being unfair and letting in evidence when I shouldn't." Green was sentenced to five days in jail and fined $25.00.

The trial proceeded to its conclusion on the afternoon of 11 November, when the jury reported it could not agree. After the jury was discharged, Judge Hill informed Green that he had "let matters go ... in order not to slow down the trial or affect your effectiveness," and proceeded to adjudge him in contempt for having "accused me of assisting the state" during voir dire on 3 November ($20 fine and two days in jail). Next Hill adjudged Green in contempt for having said, a few days earlier during the trial, that prosecutor Mooney might be suffering from some mental instability "after all the attorneys had been

ordered not to make remarks about opposing counsel." The sentences for those two contempts were fines of $20 and $25 and two day jail sentences for each offense.

Green asked if he might respond and permission was granted. He said the two contempt sentences were "another example of the court's arbitrary, unfair and extremely prejudicial conduct throughout this trial." He added that had the court not shown consistent and continued partiality to the state, defendant would have been acquitted. Whereupon Judge Hill responded, "You're in contempt again and I will fine you $25.00 and sentence you to an additional 5 days in jail." All jail sentences were adjudged to run consecutively, a total of 14 days.

Green appealed from the five summary contempt sentences. The Court of Appeals remanded the case for the appointment of another trial judge to hear the five charges of contempt. *State of Tennessee v. Bob McD. Green*, 708 S.W.2d 424 (Tenn.Crim. App.1986). Permission to appeal to this Court was not sought. The action of the Court of Criminal Appeals was based on the following rationale:

> Both the case law and Tennessee Rule of Criminal Procedure 42(b), which has the force of law, mandate that another judge be appointed to preside at a hearing on these charges. In *Taylor v. Hayes*, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897 (1974), the court commented that contemptuous conduct, though short of personal attack, may still provoke a trial judge and so embroil him in controversy that it would be difficult to maintain the calm detachment necessary for fair adjudication. In making this ultimate judgment, the inquiry must not only be whether there was actual bias on the judge's part, but also whether there was such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interest of the court and the interest of the accused. At the time these judgements of contempt went down, there was a previous charge of contempt against Mr. Green pending in this Court after an adjudication in his favor in a separate proceeding conducted by a judge appointed by the Supreme Court to hear the matter. At least three of the contempt judgments against Mr. Green appear to involve disrespect to or criticism of the trial judge. We conclude that in order to avoid the possibility of any appearance of bias that all the charges involved should be considered by some judge other than the trial judge involved in this case.

708 S.W.2d at 426, 427.

Judge Campbell Carden, a retired judge, was designated to hear the case. Trial was held on 12 November 1986. The State called only two witnesses, Judge Hill and Charlene Cartwright, the court reporter assigned to Judge Hill. Their direct testimony was limited to the first two contempts, Green's late arrival and the "chair jerking" incident. The State relied upon the transcript of the second trial for its proof of the other three contempts.

At the conclusion of the trial on that day, Judge Carden ruled from the bench that "there was plenty of proof here to show that the defendant is guilty under all four—all five of these instances. Insofar as a penalty is concerned, I think that as set by Judge Hill, who is more, of course, familiar with the local situation, the propriety of—or the amount which would be more effective."

That judgment was appealed and the Court of Criminal Appeals affirmed without change. That court found that defendant's conduct was in violation of subsection (1) of Tenn.Code Ann. § 29–9–102, which authorizes punishment for contempts of court. That subsection provides as follows:

> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice.

It is significant to note that none of the five incidents took place in the presence of the jury and none of the incidents could be described as time consuming or extending the time of trial. If there was any "obstruction of the administration of justice,"

as required for a finding of contempt, it must be the result of Green accusing Hill of bias in favor of the prosecution, and Green stating that Mooney must be suffering from mental instability, with the exception of the first instance involving Green's late arrival for court. Thus, we have three contempts based upon criticism of the trial judge for bias and one based upon criticism of the prosecuting attorney, said to be in violation of the court's order not to make remarks about opposing counsel.

In *Offutt v. United States*, 348 U.S. 11, 75 S.Ct. 11, 99 L.Ed. 11 (1954), a lawyer in a criminal trial was held in contempt of court for "contumacious and unethical conduct in open court during the trial" and was sentenced to ten days in jail. The numerous clashes between the trial judge and defense counsel that resulted in 12 findings of contempt were characterized by the United States Supreme Court as follows:

> The record discloses not a rare flareup, not a show of evanescent irritation—a modicum of quick tempers that must be allowed even judges. The record is persuasive that instead of representing the impersonal authority of the law, the trial judge permitted himself to become embroiled with petitioner.... For one reason or another the judge failed to impose his moral authority upon the proceedings.

75 S.Ct. at 15. The trial judge utilized the summary procedure authorized by Fed.R. Crim.P., Rule 42(a), which is tracked by Tenn.R.Crim.P. 42(a). The Court of Appeals found only 4 of the 12 instances of contempt supported by the record and reduced the punishment to two days. The United States Supreme Court quoted the following portion of the Court of Appeals Opinion:

> ... Appellant's conduct cannot fairly be considered apart from that of the trial judge. Each responded to great provocation from the other. The judge's treatment of appellant, examples of which are included in an appendix to our opinion in *Peckham v. United States* [93] U.S.App. D.C. [136, 210 F.2d 693] [D.C.Cir.1953], and which is the chief factor in leading a

majority of this court to conclude that Peckham's conviction cannot stand, leads us all to conclude that appellant's sentence should be reduced from 10 days to 48 hours.

75 S.Ct. at 13.

The court emphasized that a trial judge in enforcing Rule 42(a) has a duty to safeguard two indispensable conditions to the fair administration of criminal justice:

> ... (1) counsel must be protected in the right of an accused to "fearless, vigorous and effective" advocacy, no matter how unpopular the cause in which it is employed; (2) equally so will this Court "protect the processes of orderly trial, which is the supreme object of the lawyer's calling."

75 S.Ct. at 13.

Later in the opinion, the United States Supreme Court repeated the language of the Court of Appeals that the contemnor's conduct "cannot fairly be considered apart from that of the trial judge." 75 S.Ct. at 14. With respect to the purpose of the summary contempt procedure of Rule 42(b), the court said:

> It is a mode of vindicating the majesty of law, in its active manifestation, against obstruction and outrage. The power thus entrusted to a judge is wholly unrelated to his personal sensibilities, be they tender or rugged. But judges also are human, and may, in a human way, quite unwittingly identify offense to self with obstruction to law.

75 S.Ct. at 13.

In this case, neither of the courts below have given any consideration to the conduct at trial of the trial judge who imposed the original contempts, that were adopted without change by the designated judge, nor to events providing a likely basis for the judge's personal antagonism against defense counsel.

Mr. Green testified about the events that resulted in Judge Hill citing Green and his co-counsel, Carter, for contempt for violating a gag order. That occurred on 20 May 1983. A witness for the prosecution, one Nidiffer, who was serving time, was being

interviewed about his testimony in the *Hicks* case and he offered to "change" his testimony for $15,000. That offer was reported to the District Attorney's office and the T.B.I. A sting operation was planned in which Carter was to be wired and deliver the payoff to Nidiffer at his mother's house in Elizabethton where Nidiffer had been given leave to go. The transfer did not take place because Nidiffer did not go to his mother's house. Sometime during or after those events Carter and Green talked to reporters about Nidiffer, and Judge Hill cited them for contempt for violating his gag order.

The contempt citation was tried by Judge William H. Inman and was dismissed in July 1983. At the time of the second Hicks trial and the five incidents involved in the instant case, the State's appeal of Judge Inman's ruling was pending. Judge Hill testified that he understood Judge Inman's decision was based upon the fact that his gag order was not in writing and not on the court's minutes. Mr. Green testified that he did not interpret the oral gag order to extend to the Nidiffer bribe offer.

Mr. Green testified that the Nidiffer incident was the beginning of "differences" with Mooney; that Mooney kept inferring "into the record" at motion hearings that Carter had in fact precipitated "the proposal" in some way. Green was deeply offended, and he and Mooney had a lot of heated conversations about it.

On or about 24 May 1983 Judge Hill filed a complaint against Green and Carter with the Board of Professional Responsibility charging unethical conduct in violation of his gag order. Following usual procedure, Green was notified of the complaint and its contents and required to respond. Green and Carter responded and a copy of their response was sent to Judge Hill, clearly marked confidential as such matters are routinely handled. Judge Hill was cross examined about whether or not he turned over the confidential responses of Green and Carter received from the Board of Professional Responsibility to the Washington County District Attorney's Office for use in the contempt prosecution, and he said he

could not remember whether he "just told them of the contents ... or whether I gave them the papers." He acknowledged that he recalled that Carter and Mr. Ganter, a former assistant district attorney, had testified at the hearing on the motion to recuse. Eventually, Judge Hill answered "Yes" to the following question:

Q. Specifically, Judge Hill, you recall that Mr. Ganter testified that during a luncheon that he was present at with you and General Crockett and maybe others, that you made the same comment you've made here today that by—by reason of you having in your possession this confidential response submitted by Mr. Green and Mr. Carter to the Board of Professional Responsibility, that it put the State, in reference to the prosecution of them on the gag order contempt, in a very good position because they had— the defendants Green and Carter had set forth all their defenses in that, and that it was unusual to be able to—to have a criminal case where you already knew all the defendants' defenses, isn't that correct?

Judge Hill was asked if Mr. Ganter did not also testify that he had observed the privileged material from the Board of Professional Responsibility in the office of the District Attorney in Elizabethton and he responded as follows:

A. I—I don't know. He might have. I'm not saying he did or he didn't.

Mr. Green testified that at the hearing on the motion for Judge Hill to recuse himself from the *Hicks* case he asked, in open court, if in fact the judge had furnished the subject material to General Crockett and the judge responded in the affirmative. The Transcript of Motion Hearings, 31 October 1983, Vol. XII, Exhibit 12 in this record, at page 29 reads as follows:

MR. GREEN: Your Honor, we have to address an inquiry to the Court. I frankly have never done this before in 23 years, and I don't know what the proprieties are, the procedure. We would like to address an inquiry to the Court for the purpose of the record

and ask the Court if the Court did, in fact, furnish to the Attorney General's office the information that the Court received from the Disciplinary Committee?

THE COURT: Yes, I did show that letter to David Crockett, as I recall, so that we could—so that the Attorney General could prosecute better on the contempt hearing.

Judge Hill injected into the cross-examination on the issue of making available to the district attorney Green and Carter's responses to the Board of Professional Responsibility the fact that:

... Mr. Green had already in open court, accused me of—or asked me, says, "And didn't you put—didn't you report me to the Board of Professional Responsibility?"

And I said, "Yes." So he had made it public first before I told anyone that I'd even reported him to the board of responsibility—professional responsibility.

There are pages missing from Exhibit 12, the Transcript of Motion Hearings, 31 October 1983. Pages 6 through 28 are missing, but it is clear that those pages reported the testimony of Mr. Carter and Mr. Ganter. Pages 29 through 36 are the only other pages of that transcript. Mr. Green's argument in support of the motion begins on page 31 and undoubtedly continued past page 36. Thus, the state's response, if any, and the court's ruling, are missing. Mr. Green testified in the contempt case before Judge Carden that Judge Hill, in overruling the motion to recuse, invited Green to renew his motion at any time during the trial that he thought he had cause to do so. There is no contradiction of that testimony in the record before us.

There is evidence in the record that the first trial of State v. Hicks terminated after a day or two, before jury selection was completed, at the request of Mr. Mooney. The conclusion is inescapable that Judge Hill was aware, or should have been aware, on 31 October 1983 when considering the motion to recuse, that there was animosity between Green and Mooney arising out of the witness Nediffer incident and the mistrial at Mooney's request of Hicks I. and that it would permeate the second trial of Hicks. The transcript of that trial is replete with bickering between the two and no fair-minded reader of this record could conclude that Green's degree of fault exceeded Mooney's by more than an insignificant margin. If there was a single instance in this record of Judge Hill addressing a reprimand to Mooney it has eluded our attention. There are many instances where Mooney requested that the jury be excused, when there was no reason apparent to anyone for such a request. Judge Hill invariably complied and on at least one occasion said to Mr. Mooney that he had no idea why the request was made.

The third trial of State v. Hicks resulted in a jury verdict of guilty of murder in the first degree for the murder of Donald Sheward and Sharon Sheward. Hicks was indicted as an accessory before the fact with William Cooper, who admittedly committed the murders, and testified that he was hired by Hicks to do so. The majority of a Court of Appeals panel reversed the conviction and dismissed the prosecution. The majority found four errors in the admission of testimony offered by the State and vigorously objected to by defendant. The majority found several other errors that were expressly found not to be prejudicial. The last issue dealt with in the majority opinion was whether the testimony of William Cooper, an accomplice as a matter of law, was sufficient to satisfy the corroboration rule. The majority found that as a matter of law, the evidence was insufficient to meet the requirements of the rule. The dissenting judge agreed with the majority "that because of trial errors the defendant's conviction should be reversed", but he disagreed with the dismissal of the case, finding evidence sufficient to satisfy the corroboration rule. The State filed a Rule 11 application with this Court. It was granted and after due consideration the Court of Appeals was affirmed in a per curiam opinion finding that the State's application was improvidently granted. At the time of the trial of the contempt case before Judge

Carden, *State v. Hicks* was pending in this Court.

As the United States Supreme Court said in *Offutt,* judges are human and many, quite unwittingly, identify offense to self with obstruction to law. Rare is the person, layman or judge, who will admit bias or lack of impartiality in performing a duty or responsibility, before or after the fact. Equally rare are those whose personal sensibilities are not injured by an allegation of bias and lack of impartiality. There is simply no unoffending language or demeanor for raising that issue that will avoid that result. But a trial judge about to begin a trial in which a defendant's life is at stake and whose personal feelings toward defense counsel are put in issue supported by two recent alleged contempts, the filing of a complaint against counsel with the Board of Professional Responsibility and delivery of confidential material from that Board to assist prosecution of counsel before another trial judge should be certain that neither actual bias nor the appearance of bias against defense counsel exists before denying the motion. Nothing less satisfies the fair administration of criminal justice. When Judge Hill denied the motion to recuse on 31 October 1983, the appearance of bias and lack of impartiality was abundantly present. His conduct of the trial confirmed his bias and lack of impartiality.

Mr. Green could have pressed the issue of Judge Hill's bias, assistance to the state, and lack of impartiality, with greater restraint and more conventional lawyer demeanor. He admitted as much but insisted he never at any time intended any disrespect for Judge Hill; that his sole motivation was his sincere belief in his client's innocence and his sincere belief that at that time Judge Hill entertained personal feelings toward him that would affect his objectivity and his client's right to a fair trial and that he had a duty to his client to take that position. With a strong willed trial judge and a strong willed lawyer in the circumstances that Judge Hill and Mr. Green found themselves when the Hicks trial started on 1 November 1983, the incidents of conflict that resulted were almost inevitable.

It is questionable whether there is proof beyond a reasonable doubt of any instance wherein Green went beyond offense to the sensibilities of the judge and obstructed the administration of justice. To the extent that Mr. Green has been proven, beyond a reasonable doubt, to have misbehaved to the extent that he obstructed the administration of justice, we find that it was motivated by his sincere pursuit of the vigorous advocacy he deemed necessary, under the circumstances, to represent a client on trial for his life, and thus was not willful.

The judgment of the courts below are reversed and all five findings of contempt are set aside and for naught held. Costs are adjudged against the State.

DROWOTA, C.J., and COOPER, HARBISON and O'BRIEN, JJ., concur.