IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 22, 2009 Session

# ARCKAISER WATKINS, by and through her GUARDIAN AD LITEM, JOE DUNCAN v. METHODIST HEALTHCARE SYSTEM a/k/a METHODIST GERMANTOWN, ET AL.

### Direct Appeal from the Circuit Court for Shelby County
### No. CT-002983-05    Karen R. Williams, Judge

### No. W2008-01349-COA-R3-CV - May 13, 2009

Plaintiff's attorney appeals the trial court's order summarily finding him in direct contempt of court. We vacate the trial court's order, remand, and order the matter transferred to another judge for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Donald Capparella, Nashville, Tennessee, for the appellant, R. Sadler Bailey.

Robert E. Cooper, Jr., Attorney General and Reporter and Douglas Earl Dimond, Senior Counsel, for the appellee, State of Tennessee.

### OPINION

This appeal arises from a judgment of the Circuit Court for Shelby County summarily holding Plaintiff's attorney, Appellant Sadler Bailey (Mr. Bailey), in direct criminal contempt of court and sentencing him to a fine in the amount of $50 and to ten days in jail, suspending nine days upon participation in the Tennessee Lawyers Assistance Program. The facts relevant to our review of the trial court's judgment on appeal are undisputed. In May 2005, Regina Watkins and Donald Watkins, individually and as parents and next friends of Arckaiser Watkins, a minor child ("Plaintiffs"), filed a medical malpractice action against Methodist Healthcare System a/k/a Methodist Germantown ("Methodist"); Jayanta K. Dirghangi, M.D.; and Indurani Tejwani, M.D. In May 2007, the trial court appointed Joe M. Duncan, Esq., guardian ad litem to serve in the best interests of the minor child, Arckaiser Watkins. According to the court docket report contained in the record, the trial court awarded Jayanta K. Dirghangi, M.D. summary judgment in January 2007. In June 2007, the trial court entered an order of voluntary dismissal without prejudice of Indurani

Tejwani, M.D. After intense, protracted discovery and the filing of nearly 750 pleadings in the trial court,[1] the matter styled Arckaiser Watkins, by and through her Guardian Ad Litem, Joe Duncan v. Methodist Healthcare System a/k/a Methodist Germantown came to be heard in the trial court in March 2008.

Both parties characterize this action as contentious, combative and protracted. The incidents ultimately giving rise to the trial court's judgment holding Mr. Bailey in direct contempt occurred on March 27, 2008, during the jury trial of the matter. Mr. Bailey advised the court that when it did not have the time to read and think about the parties' arguments, it "almost always [got] it wrong" and that the case was "on pace . . . to set a world record for reversible error[.]" After telling the court that he was "not worried about fifty dollars that [the court] want[ed] to wave in front of [him] on a salmon-colored card"; calling opposing counsel a liar and the court "bizarre"; and stating that the court did not care whether it was lied to and could not "get it right," Mr. Bailey told the court that it "[had] never, at any time, demonstrated a willingness to enforce [its] rulings." The trial court advised Mr. Bailey to "put [his] case in front of the jury and let's just get moving," to which Mr. Bailey replied, "Oh, my God." The court then immediately announced a recess. Following a brief recess, the court granted Defendants' earlier motion for a mistrial "based on Mr. Bailey's contentious conduct toward the Court." The trial court dismissed the jury and adjourned until 2:00 PM.

At approximately 12:25 PM, Mr. Bailey and Defendants' counsel Lee Chase, III, telephoned the trial judge to inform her that, in Mr. Bailey's words, they were "real close to having a settlement" in the case should they reach "total closure of every single issue." According to Mr. Bailey, "everything else [was] worked out," and if all "uncertainty" could be resolved, the case would settle. Mr. Bailey advised the court that Methodist had "no desire to pursue in any way any further sanctions or anything against" him, and that the parties wanted to "drop it." Mr. Bailey requested the court to "excuse" the parties from the 2:00 hearing, advising the court that if it would do so, "the case would be done." The trial court indicated that a settlement probably would be advantageous to all sides, but that the 2:00 hearing would be held as scheduled. Mr. Bailey advised the court that continuing with the hearing "would mean [they] wouldn't be able to settle because there would be this uncertainty," and the court advised Mr. Bailey that he would therefore have to wait.

When it reconvened at 2:00, the trial court told Mr. Bailey, "the Court feels that you are in criminal contempt for your remarks." The court advised Mr. Bailey that it had spoken with an attorney about accepting the role of special prosecutor, and that it believed it was appropriate for another judge to hear the contempt proceedings. The court further told Mr. Bailey that there would be a charging document served on him informing him of the time and place of the hearing. The court stated, "I think that the dignity of the court was challenged in such a way this morning that cannot be overlooked." The court adjourned at approximately 2:03 PM.

---

[1] On November 18, 2005, the trial court entered a consent order staying proceedings pending the Tennessee Supreme Court's resolution of *Calaway ex rel. Calaway v. Schuker*, 193 S.W.3d 509 (Tenn. 2005). The stay was lifted on June 2, 2006.

On March 31, 2008, the trial court entered an order setting the contempt matter for a hearing on April 2, 2008. Mr. Bailey was represented by counsel at the April 2 hearing, who asked the court to allow him to address a due process concern that was "somewhat raised" in a motion to continue apparently filed the day before and denied by the trial court at the hearing. Counsel also advised the trial court that he had witnesses to present and requested the "opportunity to be heard." The trial court denied counsel's requests and announced that it had cited Mr. Bailey for direct criminal contempt of court based on his language and conduct on March 26 and 27, 2008. The trial court read its written findings of fact and conclusion of law, and stated that it was imposing a fine in the amount of $50 and sentencing Mr. Bailey to ten days in jail, suspending nine days upon voluntary participation in and satisfactory completion of programs offered by the Tennessee Lawyers Assistance Program. Counsel for Mr. Bailey again asked for permission to address the court, and restated his position that Mr. Bailey was being denied due process where the trial court had announced that the hearing would be an indirect proceeding before a special judge and with a special prosecutor. The trial court asked the Sheriff to take Mr. Bailey into custody, and counsel moved to set bond pursuant to Tennessee Code Annotated § 39-17-417. The court replied, "[h]e's going to be taken into custody one way or another." After further discussion between counsel and the trial court, the court set bond in the amount of $1,500 cash and denied counsel's offer of proof with respect to the offered witnesses.

The trial court entered its order holding Mr. Bailey in direct criminal contempt on April 2, 2008. In its order, the trial court stated:

> The [c]ourt initially indicated that this matter would be dealt with by appointing a special prosecutor and having a special judge assigned to hear the case. Upon further reflection, the [c]ourt decided that this was a direct criminal contempt that should be dealt with summarily but through a written finding of facts and law.

The trial court found that it had found Mr. Bailey in contempt on the morning of March 27, 2008, and re-set the matter for 2:00. The trial court further found that, on March 27, 2008, Mr. Bailey "willfully misbehaved so as to obstruct the administration of justice in violation of Tennessee Code Annotated, Section 29-9-102(1)." Mr. Bailey filed a timely notice of appeal to this Court.

### *Issues Presented*

Mr. Bailey presents the following issues for our review:

1.      Whether the criminal contempt conviction should be reversed because the trial court wrongfully served as prosecutor, judge and jury where (1) the primary basis for the contempt was the alleged disrespect of the trial court judge herself, and (2) there was no need to act summarily when the trial was over before the criminal contempt was even charged?

2.      Whether the trial court failed to provide essential due process by refusing to give Mr. Bailey an opportunity to defend himself, and proper notice of the charges against him?

3.      Whether the trial court abused her discretion in finding the actions of Mr. Bailey amounted to criminal contempt where (1) the alleged misconduct did not obstruct or delay the administration of justice, and (2) occurred pursuant to a sincere effort in pursuit of advocacy for his client?

4.      Whether the trial court judge abused her discretion in finding Mr. Bailey guilty of criminal contempt for making an allegedly profane statement --- "Oh, my God."?

### *Standard of Review*

Criminal contempt actions have long been used to protect the dignity and authority of the court. *E.g., Black v. Blount,* 938 S.W.2d 394, 398 (Tenn. 1996). Criminal contempt proceedings "in a very true sense raise an issue between the public and the accused." *Id.* (quoting *State ex rel. Anderson v. Daugherty*, 191 S.W. 974 (Tenn. 1917)); *see also State v. Turner*, 914 S.W.2d 951, 955 (Tenn. Crim. App. 1995). Criminal contempt should be imposed in appropriate cases "when necessary to prevent actual, direct obstruction of, or interference with, the administration of justice." *Robinson v. Air Draulics Engineering Co.*, 377 S.W.2d 908, 912 (Tenn. 1964). Thus, sanctions imposed for criminal contempt generally are both punitive and unconditional. *Black*, 938 S.W.2d at 398.

A determination of contempt is within the sound discretion of the trial court, subject to the provisions of the law. *Robinson,* 377 S.W.2d at 912. Generally, the trial court's decision will not be disturbed absent an abuse of discretion. *Id.* One charged with criminal contempt is presumed innocent until found guilty beyond a reasonable doubt. *Id.* On appeal following a finding of contempt, however, the defendant must overcome the presumption of guilt by demonstrating that the evidence preponderates against the trial court's findings. *Id.* With respect to the trial court's determinations on questions of law, however, our review is *de novo* with no presumption of correctness. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

### *Analysis*

The courts' inherent power to punish acts of contempt historically has been regarded as essential to protect the authority and integrity of the courts. *Black v. Blount,* 938 S.W.2d 394, 397 (Tenn. 1996). Although at common law the court's power to punish contempt was "vast and undefined[,]" the court's contempt authority now is governed by statute in this State. *Id*.; Tenn.

Code Ann. § 29-9-102 (2000).[2]  Contempt may be either civil or criminal in nature, and may be either direct or indirect.  *Black*, 938 S.W.2d at 398.  While civil contempt is remedial and coercive and designed to compel compliance with the court's order, the purpose of criminal contempt is to safeguard the authority of the court.  It is therefore punitive in nature.  *Id.*  Indirect contempt arises from acts committed out of the presence of the court, and cannot be punished unless the accused has been given the due process protections of notice and an opportunity to be heard.  *Id.*  Acts constituting direct contempt, on the other hand, are acts committed in the presence of the court.  *Id.* Direct contempt may be punished summarily if the judge certifies that he or she saw or heard the conduct constituting contempt.  *Turner*, 914 S.W.2d at 956; Tenn. R. Crim. P. 42(a).  When the charged acts of contempt involve disrespect to the trial court or criticism of the judge, that judge is disqualified from presiding over the contempt hearing unless the defendant consents.  *Black*, 938 S.W.2d at 398.  Recusal is preferred except where it would cause prejudicial or injurious delay. *State v. Turner*, 914 S.W.2d 951, 961 (Tenn. Crim. App. 1995).

In his brief to this Court, Mr. Bailey asserts the trial court erred in summarily holding him in contempt where the underlying litigation had settled, where the trial court scheduled a hearing to be held six days after the charged acts of contempt occurred, and where the trial court had advised Mr. Bailey that a special prosecutor and special judge would be appointed.  He submits that the trial court denied his due process rights by unnecessarily and inappropriately holding him in contempt without an opportunity to be heard where the summary procedure was not necessary to prevent an obstruction in the administration of justice.  He further asserts that the trial court's order reflects bias against him where it references behavior spanning the course of the litigation.  Mr. Bailey asserts that the trial court held no hearing on April 2, but merely read aloud pre-written findings of fact and conclusions of law.  He additionally asserts that, under *Turner*, due process prohibits the use of summary contempt except in extreme cases, particularly where the alleged contempt arises from acts of disrespect against the trial judge.  Mr. Bailey submits that in such cases, a special judge should be appointed to prevent bias or the appearance of bias.  Finally, Mr. Bailey asserts that the evidence in the record does not support a finding of willful disobedience or obstruction of the administration of justice.  He asserts that, under *State v. Green*, 783 S.W.2d 548 (Tenn. 1990), his actions are

---

[2]Section 29-9-102 provides:

> The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:
>
>> (1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;
>>
>> (2) The willful misbehavior of any of the officers of such courts, in their official transactions;
>>
>> (3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;
>>
>> (4) Abuse of, or unlawful interference with, the process or proceedings of the court;
>>
>> (5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or
>>
>> (6) Any other act or omission declared a contempt by law.

Tenn. Code Ann. § 29-9-102 (2000).

correctly perceived as zealous advocacy of this client, and not obstruction of the administration of justice or disrespect of the court.

The State, on the other hand, asserts the trial court properly invoked its summary contempt authority under Tennessee Code Annotated section 29-9-102 and Rule 42 of the Tennessee Rules of Criminal Procedure. The State quotes *Harris v. United States*, 382 U.S. 162, 164 (1965), for the proposition that disrespectful outbursts and disruptive behavior in the courtroom are acts for which a trial judge may exercise summary contempt authority to "protect the judicial institution itself." The State submits that, under *Turner*, a judge who makes a summary contempt finding is not required to impose a sentence immediately, but may decide upon an appropriate sentence after reflection and deliberation. It asserts that this is exactly what the trial court did in this case. The State argues that if the contemptuous acts occur in the presence of the trial court, then the contempt is direct and, under the Code and the Rules of Criminal Procedure, may be punished summarily.

The issues presented by this appeal, as we perceive them are threefold: first, whether the trial court erred by imposing a summary contempt judgment at the April 2 hearing; second, whether the trial judge was disqualified or should have recused herself from the contempt proceedings; third, whether a finding of contempt is supported by the record. We address these issues in turn.

### *The Summary Proceeding*

Although, as Mr. Bailey asserts, the trial court referenced acts over the course of several days and his conduct over the course of the litigation of this matter in its order on contempt, it is clear that at least some of the acts giving rise to the court's finding of contempt occurred in the presence of the trial court. Further, the court made a single finding of contempt. Thus, we agree with the State that the acts cited, assuming they constitute contempt, constitute direct contempt under Rule 42(a) of the Rules of Criminal Procedure. However, as the State asserts, Rule 42(a) is permissive in nature. It provides, in relevant part:

> A judge may summarily punish a person who commits criminal contempt in the judge's presence if the judge certifies that he or she saw or heard the conduct constituting the contempt.

Tenn. R. Crim. P. 42(a)(2008).

Clearly, a trial judge has the authority to punish direct contempt summarily when necessary to protect the authority and integrity of the court and to prevent obstruction of the administration of justice. *State v. Turner*, 914 S.W.3d 951, 956 (Tenn. Crim. App. 1995). The court's summary contempt power "may be invoked when there is a need to 'act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a . . . trial.'" *Id.* (quoting *United States v. Wilson*, 421 U.S. 309, 319 (1975)). However, because the imposition of summary punishment often dramatically departs from traditional concepts of due process, it should be used sparingly and reserved for circumstances where it is essential. *Id.* at 957 (citations omitted).

The determination of whether such exceptional circumstances exist is generally left to the sound discretion of the trial court. *Id.* (citations omitted). In exercising its discretion, the trial court must consider the nature of the accused's conduct; the effect of the conduct on the administration of justice; and the overall purpose of Tennessee Rule of Criminal Procedure 42(a), in addition to its facial requirements. *Id.* at 958. Acts justifying a summary contempt judgment include "acts threatening the judge or disrupting a hearing or obstruction of court proceedings." *Id.* at 957 (quoting *Harris v. United States*, 382 U.S. 162, 164 (1965). They also include "unusual situations . . . where instant action is necessary to protect the judicial institution itself." *Id.* (quoting *Harris*, 382 U.S. at 164). Tennessee courts have held that direct acts of contempt include acts committed in the presence of the court that are disrespectful, unreasonable, or contemptuous; use of violent or loud language or noises; or "turbulent" conduct that disrupts the proceedings. *Id.* at 958 (citations omitted). Thus, the court's discretion must be balanced against the preference for proceedings that include notice and a hearing, and in some cases, particularly where the acts of the accused consist of acts directed against the trial judge, a different judge. *Id.* at 959. When the trial judge defers the imposition of punishment until the trial has concluded, the need for summary proceedings diminishes and the preference for a hearing increases. *Id.* n.11.

Although Mr. Bailey asserts the underlying litigation had settled when he appeared before the court on the afternoon of March 27 and on April 2, 2008, we must disagree with his characterization of the status of the litigation. The record reflects that the trial court declared a mistrial based upon Mr. Bailey's behavior on March 27, and that Mr. Bailey and opposing counsel telephoned the trial court to advise the court that the matter could settle if all issues, including any potential action against Mr. Bailey, were concluded. We must express our amazement that, after two years of combative if not hostile litigation including nearly 750 pleadings and several motions for sanctions, this matter reached a near settlement less than one hour after the trial court declared a mistrial. We must express further amazement that the proposed settlement hinged, at least on Mr. Bailey's part, on the trial court's conclusion of issues affecting Mr. Bailey and not the parties. Despite Mr. Bailey's assertion, however, the matter had not settled by April 2, 2008. The underlying litigation was concluded on April 28, 2008, when another trial judge, sitting by interchange, approved a proposed settlement as in the best interests of the minor child.

We must also disagree with the State, however, that the trial court found Mr. Bailey in contempt when it declared a mistrial on March 27, 2008, and merely waited to impose an appropriate punishment after further consideration and reflection. Although the trial court's April 2, 2008, order on contempt states that the court "cited Mr. Bailey for direct criminal contempt of court" on March 27, the record does not support this finding. As noted above, when it reconvened on the afternoon of March 27, the court stated, "the Court feels that you are in criminal contempt for your remarks." The court then advised Mr. Bailey that it had spoken with an attorney about accepting the role of special prosecutor. The court additionally stated that it believed it was appropriate for another judge to hear the contempt proceedings. The court advised Mr. Bailey that there would be a charging document served on him informing him of the time and place of the hearing. Despite that trial court's comment that it "[thought] that the dignity of the court was challenged in such a way [that] morning that cannot be overlooked[,]" the court did not summarily hold Mr. Bailey in contempt.

A punishment imposed summarily is one imposed "without ceremony or delay." Black's Law Dictionary 1435 (6th ed. 1990). A summary proceeding is a "[s]hort, concise, and immediate proceeding" and a summary process is "[s]uch as is immediate or instantaneous, in distinction from the ordinary course, by emanating and taking effect without intermediate applications or delays." *Id*. The trial court did not hold Mr. Bailey in contempt on March 27. Rather, it scheduled a contempt hearing for April 2 and then sought to exercise its summary authority over acts of direct contempt.

Without opining on the merits of Mr. Bailey's assertion that his acts did not constitute acts of contempt, we must agree that the imposition of summary contempt was not appropriate in this case where a hearing was scheduled and held some six days after the alleged acts of contempt occurred. The trial court did not exercise its permissive, discretionary authority on March 27. The April 2 hearing at which the trial court found Mr. Bailey to be in contempt simply was not a summary proceeding as anticipated by the statutes or Rule 42(a). The need for the imposition of summary punishment had greatly diminished by April 2, and a hearing as originally anticipated by the trial court, including an opportunity to be heard, was appropriate at this juncture. We accordingly vacate the trial court's order on contempt and remand for further proceedings.

### Disqualification or Recusal of the Trial Judge

As our courts have noted, "the risk that the judge will become embroiled in personal antagonisms" with a party accused of direct contempt is a concern in any summary direct contempt proceeding. *State v. Turner*, 914 S.W.2d 951, 958 (Tenn. Crim. App. 1995) (citing *see Offutt v. United States*, 348 U.S. 11, 17 (1954)). This risk is of particular concern when the conduct involves a personal attack or conduct that is insulting to the trial judge. *Id.* Further, even conduct falling short of a personal attack may be so provocative as to "so embroil [the judge] in controversy that [the judge] cannot 'hold the balance nice, clear, and true between the state and the accused . . . '" *Id.* at 958-959 (quoting *Taylor v. Hayes*, 418 U.S. 488, 501 (1974)). Accordingly, due process demands particular caution against summary contempt procedures "aimed at vindicating conduct directed toward the judge." *Id.* at 959. Further, our Courts have held that case law and the Tennessee Rules of Criminal Procedure mandate that another judge be appointed to preside at a hearing involving a charge of contempt involving a personal attack on a trial judge or in other circumstances where it would be difficult for the trial judge "to maintain the calm detachment necessary for fair adjudication." *Id.* at 960. The inquiry is not only one of actual bias on the part of the trial judge, but also on the likelihood or appearance of bias. *Black v. Blount,* 938 S.W.2d 394, 401 (Tenn. 1996).

Although the trial court cited several acts of contempt on the part of Mr. Bailey, the incidents occurring on March 27 which caused the trial court to declare a mistrial included acts of alleged disrespect of the trial judge. Mr. Bailey's remarks on March 27 were the proverbial "straw that broke the camel's back." Although a trial judge in not disqualified from summary proceedings under Rule 42(a) involving acts of direct contempt, *see Id.* n.13, recusal at a later hearing is preferable unless it would cause "prejudicial or injurious delay." *Id.* at 961. Where the acts charged include acts of personal attack or disrespect of the trial judge, disqualification is mandatory in proceedings under Tennessee Rule of Criminal Procedure 42(b). *Id.* at 959.

Although we have vacated the trial court's judgment holding Mr. Bailey in contempt, whether the trial judge should be disqualified or recuse herself is a threshold matter which must be resolved in this case in light of our remand of the matter to the trial court. *See Black v. Blount*, 938 S.W.2d 394, 401 (Tenn. 1996). In addition to the nature of Mr. Bailey's acts, we note that the trial judge in this case has already imposed a sentence of contempt on Mr. Bailey. Although we do not believe the trial court's conduct of the proceedings in the underlying litigation conveys or implies any personal bias, the trial court's prior judgment summarily imposing punishment for direct contempt, combined with her statement that Mr. Bailey was "going to be taken into custody one way or another" during discussion with Mr. Bailey's legal counsel regarding the setting of bond at the April 2 hearing, would raise an appearance of bias should the trial judge preside over any further proceeding on this matter. We accordingly order this matter transferred to another judge for further proceedings upon remand.

### *Holding*

In light of the foregoing, the judgment of the trial court summarily holding Mr. Bailey in direct criminal contempt is vacated. This matter is remanded for further proceedings. Upon remand, this matter is to be transferred to another trial judge. In light of this holding, we decline to address Mr. Bailey's assertion that his acts did not constitute willful acts of contempt as not ripe for review. Costs of this appeal are taxed to the State of Tennessee.

 

 

_____
DAVID R. FARMER, JUDGE