# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### June 28, 2011 Session

## STATE OF TENNESSEE v. PAUL WHETSTONE

**Appeal from the Circuit Court for Jefferson County**
**No. 22,458-I      Jon Kerry Blackwood, Senior Judge**

---

### No. E2010-02333-CCA-R3-CO - Filed October 31, 2011

---

The Defendant, Paul Whetstone, was convicted of direct criminal contempt by the Jefferson County General Sessions Court, Judge Alfred Benjamin Strand, Jr., presiding. The Defendant then filed a petition for a writ of certiorari and supersedeas in the Jefferson County Circuit Court, which was granted. Following its review, the Jefferson County Circuit Court affirmed the Defendant's conviction. In this appeal as of right, the Defendant contends that the evidence was insufficient to sustain his conviction. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Paul Whetstone, Morristown, Tennessee, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; John H. Bledsoe, Senior Counsel; and Randall Eugene Nichols, District Attorney General, pro tem, for the appellee, State of Tennessee.

## OPINION

On February 17, 2010, the Defendant, a criminal defense attorney, was in the General Sessions Court for Jefferson County awaiting a preliminary hearing for a client. The Defendant's client, "a 65[-]year old female," faced charges of driving under the influence, simple possession of marijuana, and possession of drug paraphernalia. At approximately 4:30 p.m., the Defendant interrupted the court's proceedings and approached the lectern to

address Judge Alfred Benjamin Strand, Jr. The Defendant complained that he had been waiting since 1:00 p.m. for the preliminary hearing and then stated the following:

> I am advised by [Assistant District Attorney] General [Charles] Murphy today, if the Court please, that he is threatening to have my client arrested on a new charge of felony evading arrest. Is that something the Court is going to allow? I mean, do I have to clear that hurdle before I have a preliminary hearing?

Judge Strand responded that he had no control over what the State planned to charge the Defendant's client with because "that's within his prerogative." The Defendant then stated, "It's your Court, Judge." Judge Strand once again explained that "[i]t's his prerogative what he charges in this Court." The Defendant asked "[w]hat kind of bond" he would set for his client. Judge Strand responded that he would "see whenever the charges come[] down."

> At this point, General Murphy addressed the court and stated the following:

> I told Mr. Whetstone, so he was aware. I'm ready for a preliminary hearing today. We'll do our preliminary hearing today. I gave him the option if he wanted to have a hearing on the evading, she'd have to be arrested on warrant. I fully intend to arrest her to the grand jury through a sealed presentment for evading.

The Defendant interrupted General Murphy and insisted that General Murphy had told him "she'd be arrested today." General Murphy responded, "That's up to [the Defendant]." The following exchange then occurred:

> [The Defendant]: Oh, is it up to me? Well, then, if it's up to me if I go forward with the preliminary hearing, I have to have -- my client has to get arrested, so it's my fault? That's ---
> [General Murphy]: Your Honor ---
> [Judge Strand]: Mr. Whetstone, what the District Attorney General does, that's within his prerogative.
> [The Defendant]: It's your Court. It's your Court.
> [Judge Strand]: No, sir. It's not my Court as far as what the State does or what they're willing to charge. I don't have that prerogative, Mr. Whetstone. That's part of our judicial -- I thought you'd learned that in law school.
> [The Defendant]: Well, Judge, maybe I did learn it in law school, but I've been here since [1:00 p.m.] today, and I told the Court that I was ready[.]

-2-

The Defendant expressed his frustration about how long he had been kept waiting for his client's preliminary hearing. Judge Strand explained that "essentially, we take care of everything else and then we have the preliminary hearings." Judge Strand also expressed that there were other places he would have rather been but that he was "going to stay here until we get finished because that's part of my job, the same as your job is to represent your client whenever we get around to it." The Defendant remained frustrated at the delay and told Judge Strand that "it would be a very brief preliminary hearing" with only one witness. The Defendant also asserted that the witness was "sitting here with one case on the docket."

After the Defendant's complaints about how long he and his client had been kept waiting, the following exchange occurred:

[The Defendant]: Judge, I mean, do I go forward at the peril of my client, who is 65 years old, getting arrested if we have a preliminary hearing?

[Judge Strand]: I think that's the call you're going to have to make and that's the call I had to make in my almost -- let's see here -- [43] years of practicing law. I had to make that call several times when I was practicing law and was a defense attorney. I think that's part of ---

[The Defendant]: Well, I've practiced almost [20], Judge, and I've never been threatened with my client being arrested if I go forward with the preliminary. Did you have that happen to you?

[Judge Strand]: Mr. Whetstone, I don't know what ---

[General Murphy]: Your Honor, he's misrepresenting something to the Court, first of all. He's saying that the State has threatened her in order -- if she goes through with the preliminary hearing. I told counsel she can have her preliminary hearing. I advised him if we wanted a prelim [sic] on the evading part, I would have to arrest her ---

[The Defendant]: Arrest her ---

[General Murphy]: --- for the evading charge. Now, if she wants to have a prelim [sic] on the whole thing, that's fine, but she will get arrested whether she waives it or whether she has a hearing, regardless. When we go to Circuit Court and this case is presented to the grand jury, the facts of this case will show that this lady did not stop for over a mile for these police officers with active blue lights, which is felony evading arrest. And that means she will be arrested, she can have her day in Court and a jury trial.

And, Mr. Whetstone, I would appreciate being told a motion is coming up before the Court before I'm advised that I'm in the middle of a motion hearing on something that Mr. Whetstone's got his panties in a wad over something he's taking personally.

[Judge Strand]: Gentlemen ---

-3-

[The Defendant]: The attorney general, I'll be glad to show him that I'm not wearing panties and I'll be glad to ---

[Judge Strand]: Mr. Whetstone ---

[The Defendant]: And I'll be ---

[General Murphy]: On what ---

[Judge Strand]: Gentlemen, gentlemen.

[The Defendant]: I've practiced law [20] years. I've never been threatened with a client being arrested for something she's not even charged with. And if I have ---

[Judge Strand]: Well, Mr. Whetstone ---

[The Defendant]: --- a preliminary hearing.

[Judge Strand]: Mr. Whetstone ---

[General Murphy]: That's not what was said, though.

(Indiscernible due to Judge [Strand] and counsel talking simultaneously.)

[Judge Strand]: I'm not going to hear it anymore, Mr. Whetstone. You can just have your seat, and we'll get to it when we get to it today.

[The Defendant]: I don't care if it's midnight, Judge, but is she going to be arrested?

[Judge Strand]: I don't know, Mr. Whetstone.

[The Defendant]: Do I need to call a bondsman, Judge ---

[Judge Strand]: I don't know. That's up to the District Attorney General and the officers.

[The Defendant]: If she's not been charged, how can I have a hearing on a case that's not been charged? How do you do that, Judge? She has not been charged with evading.

[Judge Strand]: Well, I guess we don't have it then.

[The Defendant]: So she'll be arrested for it, and then she'll be held in jail until another day and I'll have to come back and ---

[Judge Strand]: I guess you will. I guess that's the choice you're going to have to make right now, Mr. Whetstone.

[The Defendant]: I'm going to make that choice, Judge, and I'm going to the Court of the Judiciary on you over this.

[Judge Strand]: You go right ahead, Mr. Whetstone ---

[The Defendant]: I'm going. I'm going.

[Judge Strand]: You know what, Mr. Whetstone?

[The Defendant]: What?

[Judge Strand]: I'm going to report ---

[The Defendant]: In [20] years I've never seen this happen.

[Judge Strand]: Mr. Whetstone, I am going to report you to the ---

[The Defendant]: Good.

[Judge Strand]: Have a seat ---

[The Defendant]: Good. I'm reporting you too.

[Judge Strand]: Have a seat right over there. I'm ---

[The Defendant]: I'm going to ---

[Judge Strand]: I'm holding you in contempt of court. You have a seat.

[Bailiff]: Have a seat.

[Judge Strand]: You have him have a seat. I'm holding you in contempt of court.

[The Defendant]: You're in contempt of the law.

[Bailiff]: Sit down, Mr. Whetstone, please.

[Judge Strand]: All right. I'm holding you in contempt of court. And I'll have Judge Bell ---

[The Defendant]: I want a record of this.

[Judge Strand]: You go ahead and you make a record of it. And I'll have Judge Bell ---

[The Defendant]: I've got a record of it.

[Bailiff]: Enough, Mr. Whetstone.

[Judge Strand]: Mr. Whetstone, I'll have a special judge come in here and try it.[1]

[The Defendant]: Please.

[Judge Strand]: I'm holding you in contempt of court right now.

(Footnote added).

The general sessions court then held a brief recess. When Judge Strand returned to the bench he stated that the Defendant had "to represent his client." The Defendant responded by stating, "I don't want to represent her in front of your Honor. I move to recuse." Judge Strand responded, "I guess for your client, it would probably be better if I did." General Murphy then reiterated for a third time that he did not threaten to have the Defendant's client arrested if she went through with the preliminary hearing. General Murphy stated as follows:

Your Honor, me and Mr. Whetstone talked. It's going to be a preliminary negotiated. I'm not having an [arrest]. It's probably the purview of the grand jury, but he needs to be aware of that, and there's some miscommunication between me and him on that issue. But that is an option that the grand jury's

---

[1]Judge Strand held the Defendant in summary criminal contempt pursuant to Tennessee Rule of Criminal Procedure 42(a). However, Judge Strand mistakenly stated that there would be a hearing on the contempt charge pursuant to Rule 42(b) which governs non-summary criminal contempt.

looking at. We've discussed that, and we'll discuss that in the future. If his Honor will put it on whatever conflict day, we'll deal with that in front of Judge Bell or whoever [sic] ---

After a brief discussion regarding scheduling, the following exchange occurred:

[Judge Strand]: Mr. Whetstone, I'm charging you with contempt of court. I will have the L.C.'s office here to come appoint a judge and try you in contempt of court.
[The Defendant]: That will be fine, Judge. I look forward to defending myself.
[Judge Strand]: That will be fine, Mr. Whetstone. And I'll tell you what, you've got about one foot through that door, right there -- the green mile.
[The Defendant]: What is that supposed to do, Judge? What is that statement supposed -- to provoke me? I'm not going to let it. I'm not going to let it provoke me. I apologize to you. I'm not going to allow you to provoke me, and that's the only thing I apologize to you for.
[Judge Strand]: Mr. Whetstone, I'm going to report -- I'm going to report you to the Board of Responsibility. This conduct ---
[The Defendant]: Please.
[Judge Strand]: This conduct is reprehensible. Never in my entire [42] years or [43] years in the legal profession [have I] ever acted like this. And I have never seen in my [43] years, both as a Circuit Judge, Sessions Judge, have I ever seen any kind of conduct like this when I've been present in court. I have never seen anything like this, never. I have never seen an attorney be more disrespectful before the Court than what you have been. Even Herb Moncier could not come up to your conduct here today. So I would suggest that you get out of this courtroom before, essentially, I do put you in jail.
[The Defendant]: What about my new court date, please, Judge? Do I need to confer with the Attorney General about that?
[Judge Strand]: April 15, 9:00 a.m. before Judge Bell. And you'll be notified when the judge will be hearing your contempt of court matter. I'm going to ask the A.O.C. appoint somebody to hear that.

On February 26, 2010, the general sessions court entered an order reciting the events that transpired on February 17, 2010, and declaring that it had summarily found the Defendant guilty of direct criminal contempt. The order stated that the Defendant's actions "directly interrupted the proceedings of the Court, and tend[ed] to impair the respect due the Court." The trial court did not impose a fine or sentence against the Defendant, but did require that the Defendant pay the court costs.

On March 5, 2010, the Defendant filed a petition for a writ of certiorari and supersedeas in the Jefferson County Circuit Court. The petition was granted on August 16, 2010, and the record of the lower court proceedings was ordered to be submitted to the circuit court for its review. Judge Jon Kerry Blackwood was eventually assigned to hear this case. The circuit court then reviewed the case upon the record and the parties' briefs. On November 3, 2010, the circuit court entered a memorandum opinion stating as follows:

> [I]t is clear that the [Defendant's] conduct was willful. The [Defendant] began the colloquy with the Sessions Court by announcing that his discussions with the State had resulted in the information that his client might be arrested on a new charge. He then queried if the Court would permit this. [The Defendant] was clearly told by the Court that the charging decisions [were] within the discretion of the Attorney General. The [Defendant] was not satisfied with that answer and continued to engage the Court with inquiries and rhetorical questions about the ability and authority of the Court to intervene. The [Defendant] was advised by the General Sessions Court that a preliminary hearing would be afforded his client according to the established policy of the Court, but [the Defendant] continued to engage in debate and protest to the Court. [The Defendant] was ordered to sit down and he continued to argue with the Court. He disobeyed the General Sessions Court and this conduct was willful and obstructed the administration of Justice.

> The [Defendant] contends that his conduct resulted from his zealous advocacy of his client. His conduct was zealous, but hardly appropriate under the circumstances. This Court has reviewed the audiotape of the proceeding and it is clear that [the Defendant] was angry, contentious and threatening. He basically lost his temper to the point he threatened the General Sessions Court by announcing that he would report the General Sessions Judge to the Court of the Judiciary. Basically, the [Defendant] was angry with the District Attorney and wanted the Judge to intercede in his behalf. When the Judge refrained and explained his reasons, the [Defendant] should have ended the discussion. Instead he let his anger control his behavior and disrupted the court proceeding. This was, after all, a General Sessions proceeding to determine probable cause on the charging warrants. [The Defendant] could have conducted a preliminary hearing, await its outcome, then taken steps depending on the further actions of the State. He did not do so and his conduct was contemptuous and subject to summary contempt. After a review of the record, the finding of contempt is sustained.

The Defendant now appeals the circuit court's judgment.

ANALYSIS

The Defendant contends that the evidence was insufficient to sustain his conviction. The Defendant's main assertion is that he could not be held in contempt because his actions were justified by General Murphy's alleged threat to have his client arrested if a preliminary hearing was held that day. The Defendant repeatedly alleges that the circuit court erred by affirming his conviction because its opinion "omitted entirely . . . the most critical issue of all," General Murphy's supposed threat. The Defendant also argues that the Rules of Professional Conduct do not apply to him and that his actions must be judged under the previous Code of Professional Responsibility's standard of zealous representation of clients. The Defendant further argues that Judge Strand's failure to preemptively intercede on behalf of the Defendant's client justified his actions. The Defendant concludes that, given the circumstances, his conduct was not contemptuous. The State responds that the evidence was sufficient to sustain the Defendant's conviction. We agree with the State.

*I. Misrepresentation of the Circuit Court's Opinion*

The Defendant has repeatedly asserted, both in his brief and at oral arguments, that the circuit court's memorandum opinion "omitted entirely" General Murphy's supposed threat to have the Defendant's client arrested if she went through with a preliminary hearing. To that end, the Defendant has represented to this court in his brief that the circuit court's opinion "merely recited the following in [its] findings of fact":

> The transcript of these proceedings reveals that the [Defendant] addressed the Jefferson County Sessions Court to indicate that the State and his client had been unable to settle the case and that he required a preliminary hearing. As the General Sessions Judge informed the [Defendant] that a new charge would be the prerogative of the State, the [Defendant] continued to query the Sessions Court regarding the possible arrest of his client. The audio tape reveals that the exchange between the [Defendant], Court and the State became heated and contentious. Finally, the General Sessions Judge told the [Defendant] to be seated and the [Defendant] continued his exchange with the Judge and his tone became more strident. Subsequently, the [Defendant] told the General Sessions Judge that he was going to report the Judge to the Court of the Judiciary. The exchange continued and the [Defendant] was again told to be seated. The [Defendant] made a further comment. Immediately thereafter, the Sessions Court informed the [Defendant] that he was in contempt.

However, a review of the record reveals that the circuit court's opinion actually stated the following:

> The transcript of these proceedings reveals that the [Defendant] addressed the Jefferson County Sessions Court to indicate that the State and his client had been unable to settle the case and that he required a preliminary hearing. During this discussion, he revealed to the Sessions Court that the State intended to have his client arrested on a new charge of evading arrest. The [Defendant] protested to the Court that the State was using the threat of a new arrest to deprive her a preliminary hearing. After the General Sessions Judge informed the [Defendant] that a new charge would be the prerogative of the State, the [Defendant] continued to query the Sessions Court regarding the possible arrest of his client. The audio tape reveals that the exchange between the [Defendant], Court and the State became heated and contentious. Finally, the General Sessions Judge told the [Defendant] to be seated and the [Defendant] continued his exchange with the Judge and his tone became more strident. Subsequently, the [Defendant] told the General Sessions Judge that he was going to report the Judge to the Court of the Judiciary. The exchange continued and the [Defendant] was again told to be seated. The [Defendant] made a further comment. Immediately thereafter, the Sessions Court informed the [Defendant] that he was in contempt.

(Emphasis added). Furthermore, the circuit court stated in its analysis that the Defendant "began the colloquy with the Sessions Court by announcing that his discussions with the State had resulted in the information that his client might be arrested on a new charge." Not only has the Defendant repeatedly misrepresented to this court that the circuit court's opinion ignored his allegations against General Murphy, but the Defendant omitted from the quotation in his brief two sentences specifically dealing with the allegations.

Similarly, the Defendant has repeatedly requested that this court review a letter sent to him from Chief Judge Curtis Collier of the United States District Court for the Eastern District of Tennessee. The Defendant stated at oral argument that "Judge Collier has at least found that what I did was not contemptuous." Judge Collier's letter was a response to the Defendant's "self report of [a] disciplinary matter" and does not address whether the Defendant's actions were contemptuous under either state or federal law. Instead, the pertinent section of the letter provides the following:

> Having reviewed your letter and the materials submitted along with the letter, I do not see a need for any disciplinary action on our part. The conduct that lead to the charge of contempt of court took place in state court, not

federal court.  Because of that, the state interest is paramount and our interest is secondary.  The conduct seems to have been prompted by anger and frustration and not a sign of anything other than a momentary loss of temper. The conduct does not suggest a lack of competence or inability or unwillingness to comply with professional standards.

In the letter and supporting material you indicate you are requesting a de novo hearing before the Circuit Court and that you have reported the matter to the Tennessee Board of Professional Responsibility.  Both of these entities can be expected to take some action with respect to the conduct.  Of course, if the Board of Professional Responsibility does take some disciplinary action in the future, then we may impose reciprocal action in accordance with our local rules.

(Emphasis added).  Judge Collier's letter clearly does not exonerate the Defendant, but instead merely reserves action on the issue pending any action taken by the Board of Professional Responsibility.  Given the Defendant's willingness to mis-characterize Judge Collier's conclusions and to misquote Judge Blackwood's memorandum opinion in order to support his position, we proceed with extreme caution in our review of the Defendant's remaining allegations.

*II. Application of the Rules of Professional Conduct*

The Defendant contends that his actions were justified because he was attempting to "zealously" represent his client.  To that end, the Defendant argues that the current Rules of Professional Conduct do not apply to him.  The Defendant maintains that because he was licensed in 1990, "he is 'grandfathered' in under the former description of representation, and not bound by the relaxed [Tennessee Supreme Court Rule 8, Rule of Professional Conduct 1.3], entitled 'Diligence.'"

Tennessee's Code of Professional Responsibility was replaced by the Rules of Professional Conduct on March 1, 2003.  The Rules of Professional Conduct were intended "to have prospective application only" and apply "to all relationships existing on, and conduct taken from," March 1, 2003, forward.  Tenn. Sup. Ct. R. 8, Transition Rules Governing the Implementation of the Tennessee Rules of Professional Conduct; see also Beard v. Bd. of Prof'l Responsibility, 288 S.W.3d 838, 857 (Tenn. 2009); Bd. of Prof'l Responsibility v. Maddux, 148 S.W.3d 37, 38 n.1 (Tenn. 2004) (determining whether attorneys' actions were governed by the Code of Professional Responsibility or the Rules of Professional Conduct based upon when the conduct occurred).  The Rules of Professional Conduct are prospective and contain no "grandfather" provision exempting an attorney from

having to comply with them. Even an attorney licensed in the days when Andrew Jackson served on this state's supreme court would still be subject to the Rules of Professional Conduct for that attorney's actions occurring on or after March 1, 2003.

Although both the Code of Professional Responsibility and the Rules of Professional Conduct encourage zealous advocacy on a client's behalf, neither justifies the Defendant's angry, disruptive, and disrespectful behavior. Attorneys are limited to "whatever lawful and ethical measures are required to vindicate a client's cause or endeavor." Tenn. Sup. Ct. R. 8, RPC 1.3, cmt. (1) (2011). Additionally, "[t]he lawyer's duty to act with reasonable diligence does not require the use of offensive tactics or preclude the treating of all persons involved in the legal process with courtesy and respect." Id. Accordingly, the Defendant cannot use either the Code of Professional Responsibility or the Rules of Professional Conduct to justify his actions before Judge Strand.

*III. Judge Strand's Response to the Defendant's Request*

The Defendant also contends that his actions were justified because Judge Strand refused to preemptively intercede on behalf of the Defendant's client. The Defendant argues that Judge Strand's refusal to intercede caused Judge Strand to become "a mimicking doppelganger, moving in perfect unison with the ill-conceived gyrations of the prosecution." The Defendant contends that as a result, "a new brand of advocacy must necessarily develop in order to maintain whatever might remain of Due Process of Law [sic][.]" The Defendant concludes that had he not behaved the way he did before Judge Strand, his client would have suffered "at the collective hand of this freak amalgam that is aptly described as a prosecutorial-judicial tag team." This court is neither persuaded nor amused by the Defendant's disrespectful description of the participants and proceedings in general sessions court, and we determine that this issue has no merit.

Despite the Defendant's assertions to the contrary, the law of this state regarding the role of the District Attorney General is relatively straightforward. A District Attorney General "is an elected constitutional officer whose function is to prosecute criminal cases in his or her circuit or district." Ramsey v. Town of Oliver Springs, 998 S.W.2d 207, 209 (Tenn. 1999). The District Attorney has extremely broad discretion to seek a warrant, presentment, information, or indictment against an individual, "subject only to certain constitutional restraints." Id. "The District Attorney General and only the District Attorney General can make the decision whether to proceed with a prosecution for an offense committed within his or her district." Id. Therefore, "as an incident of separation of powers, the courts may not interfere with the discretion of the District Attorney in their control over criminal prosecutions." Pace v. State, 566 S.W.2d 861, 867 (Tenn. 1978) (Henry, C.J., concurring) (citing United States v. Cox, 342 F.2d 167, 171 (5th Cir. 1965)). If a District

-11-

Attorney has violated a constitutional restraint in initiating a prosecution, it will instead only be after "the charging process in this state[,] the indictment[,][2] has been completed[] [that] the disposition of the charge becomes a judicial function." Id. (footnote added). The proper method of dealing with an unconstitutional prosecution would be through a motion to dismiss the charge and not through some sort of preemptive action by a court. Accordingly, Judge Strand was correct in his statements to the Defendant that he could not stop General Murphy from charging the Defendant's client with evading arrest.

Additionally, there is no evidence in the record to support the Defendant's claim that General Murphy threatened to have the Defendant's client arrested if she went through with her preliminary hearing. General Murphy stated three times on the record that the Defendant had misrepresented what he had said. General Murphy explained to Judge Strand that he had informed the Defendant that he was planning to seek an indictment for evading arrest once the case reached the grand jury. At one point, as the Defendant continued to berate Judge Strand, General Murphy exclaimed, "That's not what was said, though." It is clear from General Murphy's statements that he was going to charge the Defendant's client with evading arrest regardless of whether a preliminary hearing was held that day. General Murphy only proposed to arrest the Defendant's client if she wished to include the evading arrest charge in her preliminary hearing that day. Despite General Murphy's repeated explanations on the record, the Defendant continued to insist to Judge Strand, and continues to insist to this court, that General Murphy threatened to arrest the Defendant's client for having a preliminary hearing. The record clearly belies the Defendant's allegation that General Murphy threatened his client. We conclude that Judge Strand and General Murphy's actions provided no justification for the Defendant's behavior before Judge Strand.

*IV. Defendant's Conduct was Contemptuous*

Having rejected the Defendant's proffered justifications for his actions, we must now determine whether the Defendant's behavior before Judge Strand constituted direct criminal contempt. Tennessee Rule of Criminal Procedure 42(a) provides that a "judge may summarily punish a person who commits criminal contempt in the judge's presence if the judge certifies that he or she saw or heard the conduct constituting the contempt[,]" and the contempt order has recited the facts, been signed by the judge, and entered in the record. In order for conduct to be punished as contemptuous, it must fall into one of the following statutory categories:

(1) The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;

---

[2]Or in this case, the execution of the arrest warrant.

(2) The willful misbehavior of any of the officers of such courts, in their official transactions;

(3) The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;

(4) Abuse of, or unlawful interference with, the process or proceedings of the court;

(5) Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or

(6) Any other act or omission declared a contempt by law.

Tenn. Code Ann. § 29-9-102. On appeal, this court will apply the same standard of review to criminal contempt cases as it applies in other criminal proceedings. Black v. Blount, 938 S.W.2d 394, 399 (Tenn. 1996). Therefore, the Defendant must establish that no "reasonable trier of fact" could have found the essential elements of contempt beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Use of a court's summary criminal contempt power "must be viewed in light of its express purpose and function[,]" which is "to punish certain conduct when necessary to vindicate the dignity and authority of the court." State v. Turner, 914 S.W.2d 951, 956 (Tenn. Crim. App. 1995). Summary criminal contempt may be invoked when a court needs to "act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress" of the court's proceedings. Id. (quoting United States v. Wilson, 421 U.S. 309, 319 (1975)). Therefore, summary criminal contempt powers are to be used sparingly and only in cases of "exceptional circumstances." Id. at 957. Whether exceptional circumstances exist is left to the discretion of the trial court. Id. However, exceptional circumstances "would certainly include acts threatening the judge or disrupting a hearing or obstructing court proceedings." Id. (quoting Harris v. United States, 382 U.S. 162, 164 (1965)) (quotation marks omitted).

Direct criminal contempts generally involve Tennessee Code Annotated section 29-9-102(1), the "willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice." See Turner, 914 S.W.2d at 956. Behavior that obstructs the administration of justice "includes all willful misconduct which embarrasses, hinders, or obstructs a court in its administration of justice or derogates the court's authority or dignity, thereby bringing the administration of law into disrepute." Black, 938 S.W.2d at

401. Examples of this type of behavior include disrespectful, unreasonable, or "turbulent" conduct; "clamorous and violent language;" and "direct personal misbehavior, for example, loud speaking or making any noise in the courtroom . . . as to interfere with the procedure of the court." Turner, 914 S.W.2d at 958. A person acts willfully[3] when the person "acts intentionally with respect to the nature of the conduct . . . when it is the person's conscious objective or desire to engage in the conduct . . . ." Tenn. Code Ann. § 39-11-302(a).

When a summary criminal contempt involves an attorney, the court must balance between "two indispensable conditions to the fair administration of criminal justice":

> (1) counsel must be protected in the right of an accused to "fearless, vigorous and effective" advocacy, no matter how unpopular the cause in which it is employed; (2) equally so will this Court "protect the processes of orderly trial, which is the supreme object of the lawyer's calling."

Turner, 914 S.W.2d at 958 (quoting Offutt v. United States, 348 U.S. 11, 13 (1954)). However, in balancing these two competing interests, our supreme court has emphasized that

> disrespectful conduct by an attorney has a greater impact upon the dignity of a court than does disrespectful conduct of a lay person. Public respect for the law derives in large measure from the image which the administration of justice presents. Lawyers play an integral role in the administration of justice and, as such, their conduct can have a great influence upon the extent to which the proceedings are perceived as fair and dignified by jurors, defendants, witnesses, and spectators. Accordingly, a lawyer's allegations of inequity and unfairness are uniquely denigrating to the dignity of the proceedings.

Black, 938 S.W.2d at 401.

Although the Defendant's conduct did not occur in front of a jury, the facts of this case are very similar to the facts in Turner, where defense counsel "began arguing with the [trial court] in a disrespectful and loud voice" following the trial court's ruling on an objection. 914 S.W.2d at 954. The judge in Turner "talked firmly but professionally with [defense counsel] and urged him to calm down[,]" but defense counsel responded by shouting "don't you raise your voice to me." Id. The trial court found defense counsel in summary criminal contempt. Id. Defense counsel continued to argue with the trial court in a "loud and disrespectful voice" and was found in summary criminal contempt two more

---

[3]This court has generally equated the mental state of "willful" with that of "intentional." See State v. Electroplating, Inc., 990 S.W.2d 211, 221 n.9 (Tenn. Crim. App. 1998).

-14-

times before being removed from the courtroom.  Id.  On appeal, a panel of this court upheld defense counsel's three convictions for summary criminal contempt.  Id. at 961.  The panel concluded that the convictions were justified given defense counsel's "distemper in response to a ruling of the trial judge and his apparent refusal to gain control of himself."  Id.

In the present matter, the Defendant interrupted the general sessions court's proceedings to complain about an alleged threat from General Murphy and about the delay in the start of the preliminary hearing.  When Judge Strand correctly explained that he could not interfere with the District Attorney General's decision to charge the Defendant's client with evading arrest, the Defendant became incensed and combative.  The Defendant repeatedly questioned Judge Strand as to why he would not intercede on the Defendant's client's behalf.  When General Murphy attempted to explain to Judge Strand what he had said, the Defendant was interruptive and dismissive towards General Murphy.  The exchange between General Murphy and the Defendant became heated.  When Judge Strand attempted to calm the two men down, the Defendant refocused his anger at Judge Strand.  Judge Strand ordered the Defendant to sit down, but instead the Defendant continued to berate Judge Strand with questions about the possibility of his client being arrested on a new charge. When Judge Strand continued to insist that he could not intercede on the Defendant's client's behalf, the Defendant threatened Judge Strand with a complaint to the Court of the Judiciary. The Defendant continued with his interruptive and disrespectful conduct and ignored repeated orders from Judge Strand to sit down.  After Judge Strand stated that the Defendant was in contempt, the Defendant angrily shouted back that Judge Strand was "in contempt of the law."  Following a recess, the Defendant continued his disrespectful conduct towards Judge Strand.

The record clearly reflects that the Defendant's conduct was willful and obstructed the administration of justice.  We agree with the circuit court's characterization of what transpired in Judge Strand's courtroom that day.  The Defendant was "angry, contentious and threatening" and "basically lost his temper to the point he threatened" Judge Strand with an ethics complaint. The Defendant was "angry with the District Attorney and wanted the Judge to intercede on his behalf."  When Judge Strand refused to do so, the Defendant "let his anger control his behavior and disrupt the court proceeding."  This is especially true given the personal animosity the Defendant has expressed regarding both General Murphy and Judge Strand.  The Defendant spends a significant portion of his brief reprinting the complaint he filed against Judge Strand in the Court of the Judiciary which alleged that Judge Strand "hates" the Defendant.  The Defendant was likely caught off guard at General Murphy's statement that he would seek a new charge of evading arrest.  Angry with General Murphy, the Defendant sought the assistance of Judge Strand.  When Judge Strand explained that he could not intercede for the Defendant's client, the Defendant's behavior essentially devolved into a temper tantrum that culminated in the Defendant's threat to file a disciplinary

complaint against Judge Strand. Accordingly, we conclude that the evidence was sufficient to sustain the Defendant's conviction for direct criminal contempt.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE